**2012-1170**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT
_____

### SUPREMA, INC. and MENTALIX, INC.,
*Appellants,*

v.

### INTERNATIONAL TRADE COMMISSION,
*Appellee,*

**and**

### CROSS MATCH TECHNOLOGIES, INC.,
*Intervenor.*
_____

Appeal from the United States International Trade Commission in
Investigation No. 337-TA-720.
_____

## INTERVENOR'S COMBINED PETITION FOR
## REHEARING AND REHEARING *EN BANC*
_____

Clement J. Naples
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022-4843
(212) 906-1200

Maximilian A. Grant
Bert C. Reiser
Gabriel K. Bell
LATHAM & WATKINS LLP
555 Eleventh Street NW
Suite 1000
Washington, DC 20004
(202) 637-2200

*Counsel for Intervenor Cross Match Technologies, Inc.*

February 21, 2014

# CERTIFICATE OF INTEREST

Counsel for Intervenor Cross Match Technologies, Inc. certifies the following:

1. *The full name of every party or amicus curiae represented by me is:*

   Cross Match Technologies, Inc.

2. *The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:*

   N/A

3. *All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:*

   Francisco Partners Management LLC

4. *The names of all law firms and the partners or associates that appeared for the party or amicus curiae now represented by me in the trial court or agency or are expected to appear in this court are:*

   Latham & Watkins LLP:  Maximilian A. Grant, Matthew J. Moore, Bert C. Reiser, Clement Naples, Gabriel Bell, Adam Greenfield, Michael David (former), Franklin Kang (former), Gregory Sobolski (former), Stephen McBride (former), Inge Osman (former), James Bender (former)

   Respectfully submitted,

   /s/ Maximilian A. Grant
   Maximilian A. Grant
   LATHAM & WATKINS LLP
   555 Eleventh Street NW
   Suite 1000
   Washington, DC  20004

   *Counsel for Intervenor*
   *Cross Match Technologies, Inc.*

February 21, 2014

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF COUNSEL ................................................................. 1

INTRODUCTION ................................................................. 1

BACKGROUND ................................................................. 3

ARGUMENT ................................................................. 4

I.    THE MAJORITY'S DECISION IS CONTRARY TO THE STATUTORY TEXT, LONGSTANDING AGENCY PRACTICE, AND LEGISLATIVE HISTORY ................................................................. 4

    A.    The Majority's Decision Is Contrary To The Statutory Text .............. 4

    B.    The Majority's Decision Is Contrary To Longstanding Agency Practice That Has Been Repeatedly Affirmed By This Court ............. 8

    C.    The Majority's Decision Is Contrary To The Statutory And Legislative History ............................................................. 11

II.    THE MAJORITY'S DECISION DRASTICALLY CURTAILS THE REACH OF SECTION 337 ................................................................. 14

CONCLUSION ................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Akamai Technologies, Inc. v. Limelight Networks, Inc.*,
   692 F.3d 1301 (Fed. Cir. 2012), *cert. granted*, 134 S. Ct. 895 (2014)........6, 7

*Alloc, Inc. v. ITC*,
   342 F.3d 1361 (Fed. Cir. 2003) ....................................................................11

*Certain Digital Set-Top Boxes & Components Thereof*,
   Inv. No. 337-TA-712, 2011 WL 2567284 (May 20, 2011)............................9

*Certain Electronic Devices*,
   Inv. No. 337-TA-724, 2012 WL 3246515 (Dec. 21, 2011) ..........................10

*Certain Minoxidil Powder, Salts & Compositions for Use in Hair
   Treatment*,
   Inv. No. 337-TA-267, 1988 WL 582867 (Feb. 16, 1988)..............................9

*Certain Molded-In Sandwich Panel Inserts & Methods for Their
   Installation*,
   Inv. No. 337-TA-99, 1982 WL 61887 (Apr. 9, 1982), *aff'd sub nom.
   Young Engineers, Inc. v. ITC*, 721 F.2d 1305 (Fed. Cir. 1983) ...............9, 12

*Certain Optoelectronic Devices*,
   Inv. No. 337-TA-669, 2011 WL 7628061 (Mar. 12, 2010), *aff'd sub
   nom. Emcore Corp. v. ITC*, 449 F. App'x 918 (Fed. Cir. 2011) ....................9

*Disabled American Veterans v. Secretary of Veterans Affairs*,
   419 F.3d 1317 (Fed. Cir. 2005) ..........................................................1, 11, 14

*Enercon GmbH v. ITC*,
   151 F.3d 1376 (Fed. Cir. 1998) ........................................................8, 10, 13

*In re Von Clemm*,
   229 F.2d 441 (C.C.P.A. 1955)......................................................................12

*Micron Technology, Inc. v. United States*,
   243 F.3d 1301 (Fed. Cir. 2001) ....................................................................11

**Page(s)**

*Morgan v. Principi,*
327 F.3d 1357 (Fed. Cir. 2003) ...................................................................13

*San Huan New Materials High Technology, Inc. v. ITC,*
161 F.3d 1347 (Fed. Cir. 1998) ...........................................................11, 14

*Spansion v. ITC,*
629 F.3d 1331 (Fed. Cir. 2010) .....................................................................7

*Texas Instruments Inc. v. ITC,*
988 F.2d 1165 (Fed. Cir. 1993) .....................................................................5

*Vizio, Inc. v. ITC,*
605 F.3d 1330 (Fed. Cir. 2010) ...............................................................1, 11

*Young Engineers, Inc. v. ITC,*
721 F.2d 1305 (Fed. Cir. 1983) ........................................................1, 9, 11, 12

*Young v. Community Nutrition Institute,*
476 U.S. 974 (1986)......................................................................................11

## STATUTES

19 U.S.C. § 1337 ............................................................................................1

19 U.S.C. § 1337(a)(1)(B)(i)....................................................................5, 12

35 U.S.C. § 271 ..............................................................................................6

35 U.S.C. § 271(a) ..........................................................................................6

35 U.S.C. § 271(b) ..................................................................................3, 6, 7

35 U.S.C. § 271(c) ......................................................................................6, 7

Pub. L. No. 71-361, 46 Stat. 590 (1930)......................................................12

Pub. L. No. 100-418, 102 Stat. 1107 (1988)................................................12

Page(s)

Pub. L. No. 102-563, 106 Stat. 4237 (1992)............................................................13

Pub. L. No. 103-465, 108 Stat. 4809 (1994)............................................................13

Pub. L. No. 104-295, 110 Stat. 3514 (1996)............................................................13

Pub. L. No. 106-113, 113 Stat. 1501 (1999)............................................................13

Pub. L. No. 108-429, 118 Stat. 2434 (2004)............................................................13

## OTHER AUTHORITIES

H.R. Rep. No. 100-576 (1988) (Conf. Rep.), *reprinted in* 1988
        U.S.C.C.A.N. 1547 .........................................................................................13

Sokal & Craig, *Federal Circuit Discards the "Nexus" Test for Infringement
        at the ITC, Potentially Narrowing the Scope and Effectiveness of
        § 337*, 41 AIPLA Q.J. 637 (2013) .................................................................15

## STATEMENT OF COUNSEL

1.    Based on my professional judgment, I believe the panel decision is contrary to the following precedents:  *Young Eng'rs, Inc. v. ITC*, 721 F.2d 1305 (Fed. Cir. 1983); *Vizio, Inc. v. ITC*, 605 F.3d 1330 (Fed. Cir. 2010); *Disabled Am. Veterans v. Sec'y of Veterans Affairs*, 419 F.3d 1317 (Fed. Cir. 2005).

2.    Based on my professional judgment, I believe this appeal requires an answer to the following precedent-setting question of exceptional importance:  Whether the United States International Trade Commission ("ITC") has authority to find a Section 337 violation—and issue an exclusion or cease and desist order—where it finds that an importer actively induced infringement of a patented invention using its imported articles but the direct infringement occurred post-importation.

## INTRODUCTION

For decades the ITC has exercised its authority under Section 337 of the Tariff Act of 1930, 19 U.S.C. § 1337, to issue an exclusion order when an importer has induced infringement, even when the direct infringement only occurred post-importation.  Notwithstanding that well-established understanding, a divided panel of this Court held that the ITC is "powerless to remedy" such infringement.  Maj. Op. 4, 13-26.  The majority nonetheless recognized the ITC *does* have authority to remedy another form of indirect infringement—*contributory* infringement—even when the direct infringement occurs post-importation.    Panel rehearing or

rehearing *en banc* is warranted for two reasons.

First, the majority's holding is contrary to (a) the statutory text, which precludes the majority's distinction between induced infringement and contributory infringement; (b) longstanding ITC understanding, which the majority improperly refused to afford *Chevron* deference, and this Court's precedent repeatedly affirming the ITC's understanding; and (c) the legislative history, which shows that Congress endorsed the ITC's authority that the majority now rejects.

Second, the issue is exceptionally important because the majority's holding creates a gaping hole in the ITC's ability to enforce the statutory protections against unfair trade practices and permits foreign importers to induce domestic infringement with impunity. The ruling drastically curtails the reach of Section 337. Under the majority's holding, for example, importers of high-tech devices that infringe only after being loaded with certain software can evade ITC authority simply by importing the devices without software and then actively instructing stateside partners how to assemble and use them after importation—which is exactly what happened here. But such improper trade practices are precisely the type that Congress intended ITC to stop at the border. The panel's decision strips the agency of the ability to enforce the statute in these commonplace circumstances.

Rehearing is necessary to restore the ITC's authority to enforce the statute.

## BACKGROUND

The ITC found that Appellants Suprema, Inc. (a Korean company) and Mentalix, Inc. (located in Texas) violated Section 337 because Suprema's fingerprint scanners, when imported and used with Mentalix's software perform a method for capturing and processing fingerprints that infringes Cross Match's U.S. Patent No. 7,203,344 ("the '344 patent"). The ITC determined that Suprema actively aided and abetted Mentalix's infringement by collaborating with Mentalix to import the scanners and helping Mentalix adapt its software to work with the imported scanners to practice the patented method. Based on a detailed factual record, the ITC found that Suprema willfully blinded itself to the existence of the patent and the infringing nature of the activities it encouraged, and held that Suprema induced infringement under 35 U.S.C. § 271(b). Accordingly, the ITC issued a limited exclusion order under Section 337 barring Suprema from importing products that infringe the '344 patent when combined with Mentalix software and used after importation.

On December 13, 2013, a divided panel vacated the exclusion order in relevant part, holding that the ITC has no authority to find a Section 337 violation where an importer induced infringement but the predicate direct infringement occurred post-importation. Maj. Op. 13. The majority recognized that its holding contradicts ITC precedent interpreting the statute as giving the ITC that authority,

3

*id.* at 25-26, but "decline[d] to afford deference to the Commission's views on the precise question presented" because, according to the majority, the "congressional intent … is evident from the statutory language." *Id.* at 26 & n.5.

Judge Reyna dissented, pointing out that the majority opinion "negate[s] both a statutory trade remedy and its intended relief" by "overlook[ing] the Congressional purpose of Section 337, the long established agency practice … of conducting unfair trade investigations based on induced patent infringement, and related precedent by this Court confirming this practice." Dis. Op. 4. The dissent identified numerous decisions spanning over three decades (which the majority did not address) in which the ITC issued an exclusion order barring an inducing importer's products even though direct infringement occurred post-importation. *Id.* at 5 & n.2. "In the end," the dissent concluded, "the majority has created a fissure in the dam of the U.S. border through which circumvention of Section 337 will ensue, thereby harming holders of U.S. patents." *Id.* at 4-5.

**ARGUMENT**

I.    **THE MAJORITY'S DECISION IS CONTRARY TO THE STATUTORY TEXT, LONGSTANDING AGENCY PRACTICE, AND LEGISLATIVE HISTORY**

A.    **The Majority's Decision Is Contrary To The Statutory Text**

The majority held that there is no violation where, as here, the importer actively induced infringement using the imported products but the first direct infringement occurred only post-importation. Maj. Op. 20-21. The majority

reasoned that (1) Section 337 requires "articles that … infringe" "at the time of importation" (*id.* at 15-18) and (2) there are no such "articles that … infringe" for induced infringement because the imported articles are not sufficiently "tied to" infringement until the direct infringement occurs post-importation (*id.* at 18-21). The majority is wrong on both counts.

First, the majority's interpretation is contrary to the text of Section 337. Section 337 provides that the following is unlawful:

> The importation into the United States, the sale for importation, *or the sale within the United States after importation* by the owner, importer, or consignee, of articles that … infringe a valid and enforceable United States patent ….

19 U.S.C. § 1337(a)(1)(B)(i) (emphasis added).

The statute does not require a violation to be based on articles that infringe "at the time of importation." Those words do not appear in the statute and the majority improperly engrafted them, despite this Court's frequent admonition against adding language. *See, e.g.*, *Texas Instruments Inc. v. ITC*, 988 F.2d 1165, 1181 (Fed. Cir. 1993). Instead, the statutory language precludes any such strict temporal limitation because one of the three prohibited acts expressly addresses *post*-importation conduct—*i.e.*, "*sale within the United States after importation*" of infringing articles. 19 U.S.C. § 1337(a)(1)(B)(i) (emphasis added). Thus, the statutory text expressly repudiates the majority's temporal restriction.

Second, the majority further erred in holding that no "articles that … infringe" exist where the importer induces post-importation infringement. The majority interpreted "articles that … infringe" by reference to the Patent Act's definition of infringement, 35 U.S.C. § 271. Maj. Op. 18. According to the majority, only two types of infringement—direct infringement (§ 271(a)) and contributory infringement (§ 271(c))—are "tied to" infringing articles. *Id.* at 19. In contrast, the majority asserted, inducing infringement (§ 271(b)) is focused on the "conduct of the inducer" and "is untied to an article" because inducement is not "completed" until there has been direct infringement. *Id*. at 19-20. Thus, the majority concluded, imported articles can "infringe" for purposes of Section 337 only if they satisfy the requirements for either direct infringement or contributory infringement at the time of importation. This reasoning is fundamentally flawed.

The majority's attempt to connect "articles that … infringe" to certain subsections of § 271—(a) and (c), but not (b)—is incoherent. None of those subsections defines infringing *articles*. Instead, each "sets forth a type of *conduct that qualifies as infringing.*" *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1314 (Fed. Cir. 2012) (en banc) (emphasis added), *cert. granted*, 134 S. Ct. 895 (2014). Moreover, *all three* subsections depend *both* on the conduct of the actors and on the associated articles (or processes) that ultimately practice the patented invention. 35 U.S.C. § 271(a)-(c). Thus, there is no basis on which to

single out inducement as uniquely unconnected to an article.

Further, the majority's distinction between inducement (§ 271(b)) and contributory infringement (§ 271(c)) is particularly unpersuasive. Both are forms of indirect infringement that give rise to liability only if they lead to direct infringement. *Akamai*, 692 F.3d at 1308, 1316. So, in that sense, contributory infringement is no more "completed" at the moment of importation than is induced infringement. *See* Dis. Op. 13 n.7. Yet the majority recognized that, even if the corresponding direct infringement occurs post-importation, contributory infringement *is* a basis for Section 337 violation because the articles that were imported were ultimately tied to direct infringement. That is correct. *See*, *e.g.*, *Spansion v. ITC*, 629 F.3d 1331, 1353-54 (Fed. Cir. 2010) (affirming Section 337 violation based on contributory infringement where direct infringement occurred post-importation). But it follows that the same is true for induced infringement.

At root, the majority fails to appreciate that the ITC's authority for finding a Section 337 violation (and thus issuing prospective exclusion or cease and desist orders) requires the complainant to show the respondents' demonstrated past, *completed* infringement. Here, the ITC found that Suprema induced Mentalix's infringement of the '344 patent by importing Suprema scanners and instructing Mentalix how to adapt Mentalix's software and use the scanners to perform the patented fingerprint capturing method. Suprema collaborated extensively with

7

Mentalix prior to and including importation of the scanners and, after importation, Mentalix added its software and used the scanners. In other words, when the ITC found a violation in this case, the infringement—induced and direct—*had already occurred* and was closely tied to Suprema's imported scanners. Therefore, those are "articles that … infringe" for purposes of Section 337 and the ITC may prevent continued infringement by barring those articles at the point of importation, especially where, as is the case here, the record shows that the infringing products continued to be imported after the first direct infringement. The majority's ruling curtailing the ITC's authority is unsupported by the statutory language.

## B.     The Majority's Decision Is Contrary To Longstanding Agency Practice That Has Been Repeatedly Affirmed By This Court

The majority's decision is also contrary to decades of ITC precedent and practice. Even if the statute did not, on its face, authorize the ITC to find a violation based on induced infringement where the direct infringement occurs post-importation (it does), at worst the statute is ambiguous. Therefore, the majority erred in refusing to defer to the agency's reasonable interpretation. *See*, *e.g.*, *Enercon GmbH v. ITC*, 151 F.3d 1376, 1381 (Fed. Cir. 1998) (affording *Chevron* deference to ITC interpretation of Section 337).

For over three decades, the agency has held that it has authority to find a Section 337 violation based on induced infringement even where the direct infringement occurs post-importation. *See* Dis. Op. 5 & n.2. For example, in

8

*Certain Molded-In Sandwich Panel Inserts & Methods for Their Installation*, the ITC found a violation where the importer induced infringement of a patented method by importing products (airplane parts) and training domestic aerospace companies to use them (and thus practice the patented method) post-importation. Inv. No. 337-TA-99, 1982 WL 61887 (Apr. 9, 1982) ("*Sandwich Panel Inserts*"), *aff'd sub nom. Young Eng'rs, Inc. v. ITC*, 721 F.2d 1305 (Fed. Cir. 1983).

Similarly, in *Certain Minoxidil Powder, Salts & Compositions for Use in Hair Treatment*, the ITC found induced infringement of a patented method using an imported compound (minoxidil), even though direct infringement only occurred post-importation by the "end user." Inv. No. 337-TA-267, 1988 WL 582867 (Feb. 16, 1988). Although "[n]o respondent was shown to infringe these claims directly," the "respondents who have sold topical minoxidil to the consumer and provided information through advertising and labeling on how to use it to promote hair growth have induced infringement" of the method claims. *Id.* at *6; *see also, e.g., Certain Digital Set-Top Boxes & Components Thereof*, Inv. No. 337-TA-712, 2011 WL 2567284, at *11 n.4 (May 20, 2011) ("'Direct infringement does not have to precede importation for an exclusion order to reach components that contribute to the infringement of the patents-in-issue.'" (citation omitted)); *Certain Optoelectronic Devices*, Inv. No. 337-TA-669, 2011 WL 7628061, at *15-83 (Mar. 12, 2010), *aff'd sub nom. Emcore Corp. v. ITC*, 449 F. App'x 918 (Fed. Cir. 2011).

More recently, in *Certain Electronic Devices*, the ITC reiterated its view, based on an analysis of the statutory provisions, that "section 337 may reach articles involved in indirect infringement"—inducement or contributory infringement—even when the articles as imported do not directly infringe.  Inv. No. 337-TA-724, 2012 WL 3246515, at *13 (Dec. 21, 2011).  Although the imported devices in that case were staple articles (computers) capable of substantial non-infringing uses, the ITC repeatedly stressed that there *would* have been a Section 337 violation if the complainant had demonstrated indirect infringement of the asserted method claims.  *See, e.g.*, *id*. at *12-13.  That reasoned agency view was not mere "dicta," as the majority claims (at 25).  The ITC found that it had jurisdiction over the investigation precisely because the complainant "alleged sufficient facts" as to induced infringement (and other theories) that, if proven, would show the respondent violated Section 337.  *Id.* at *7 (citing inducement allegations).  Thus, the ITC found that a violation could be premised on induced infringement, even where direct infringement occurs post-importation.

There are numerous other examples of the ITC's exercise of its authority to exclude based on induced infringement.  *See* Dis. Op. 5 n.2 (collecting fifteen examples from 1980 to 2013).  The majority erred in refusing to defer to that longstanding reasonable interpretation, *see*, *e.g.*, *Enercon GmbH*, 151 F.3d at 1381, particularly in light of this Court repeatedly confirming the ITC's authority and

relevant remedial practices. For example, in affirming *Sandwich Panel Inserts*, this Court recognized that a Section 337 violation can be premised on "'*induced and contributory* infringement of the method patents,'" even though the method claim was only infringed after the airplane parts were imported. *Young Eng'rs*, 721 F.2d at 1310 (citation omitted); *see also*, *e.g.*, *Vizio, Inc. v. ITC*, 605 F.3d 1330, 1343-44 (Fed. Cir. 2010); *Alloc, Inc. v. ITC*, 342 F.3d 1361, 1365 (Fed. Cir. 2003); Dis. Op. 7 & nn.3-4. The majority's decision is contrary to this precedent.

### C. The Majority's Decision Is Contrary To The Statutory And Legislative History

Finally, the majority's interpretation is contrary to the statutory and legislative history, which establish that Congress ratified the agency's broad authority. When Congress amends a statute without disturbing a well-established administrative or judicial interpretation—especially where the legislative history makes plain that Congress is aware of that interpretation—it thereby ratifies that understanding. *See*, *e.g.*, *Young v. Cmty. Nutrition Inst.*, 476 U.S. 974, 983 (1986) ("'[C]ongressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress.'" (citation omitted)); *Disabled Am. Veterans v. Sec'y of Veterans Affairs*, 419 F.3d 1317, 1322 (Fed. Cir. 2005) ("[C]ongressional inaction in the face of long-standing agency practice can rise to the level of implied adoption."); *Micron Tech., Inc. v. United States*, 243 F.3d 1301, 1312 n.10 (Fed. Cir. 2001) (collecting cases); *San*

*Huan New Materials High Tech, Inc. v. ITC*, 161 F.3d 1347, 1355 (Fed. Cir. 1998). Here, Congress ratified the agency's understanding and practice multiple times—with a 1988 amendment, and several times thereafter.

As originally enacted, Section 337 prohibited "[u]nfair methods of competition and unfair acts in the importation of articles into the United States." Pub. L. No. 71-361, § 337, 46 Stat. 590, 703 (1930). The courts and ITC have long recognized that patent infringement, although not initially identified specifically in Section 337, is one such unfair act. *See*, *e.g.*, *In re Von Clemm*, 229 F.2d 441, 443-44 (C.C.P.A. 1955). And "it is evident from the language used that Congress intended to allow wide discretion in determining what practices are to be regarded as unfair." *Id.* at 444. Prior to 1988, the ITC consistently held, and this Court affirmed, that an importer that induces post-importation infringement (for example, of a method patent) is liable under Section 337. *See*, *e.g*., *Sandwich Panel Inserts*, *aff'd sub nom. Young Eng'rs*, 721 F.2d at 1310, 1317; *supra* at 8-9; Dis. Op. 5 n.2.

In 1988, Congress amended the statute to expressly provide patent infringement as a basis for a Section 337 violation. Omnibus Trade and Competitiveness Act of 1988, Pub. L. No. 100-418, § 1342(a)(1), 102 Stat. 1107, 1212 (1988). Congress added the current language, making unlawful "[t]he importation into the United States, the sale for importation, or the sale within the United States after importation … of articles that … infringe" a U.S. patent. 19

12

U.S.C. § 1337(a)(1)(B)(i).  And, as this Court has held, the legislative history makes plain that, "in passing the 1988 amendments to section 337, Congress *did not intend* to weaken the ability of the ITC to prevent unfair acts."  *Enercon GmbH*, 151 F.3d at 1383 (emphasis added); *see*, *e.g*., H.R. Rep. No. 100-576, at 633 (1988) (Conf. Rep.) ("In changing the wording with respect to importation or sale, the conferees do not intend to change the interpretation or implementation of current law as it applies to the importation or sale of articles that infringe certain U.S. intellectual property rights.").  Thus, Congress was aware of the ITC's interpretation of Section 337 and intended the 1988 amendments not to restrict the scope of the ITC's authority to find a violation based on induced infringement where the direct infringement occurred post-importation.  *See also Morgan v. Principi*, 327 F.3d 1357, 1361 (Fed. Cir. 2003) ("Congress is presumed to legislate against the backdrop of existing law.").

Moreover, after the 1988 amendments, the ITC adhered to its view, finding Section 337 violations for inducing post-importation infringement within the United States.  *See*, *e.g*., *supra* at 9-10; Dis. Op. 5 n.2.  And Congress has amended Section 337 several more times without disturbing the agency's understanding.  *See*, *e.g*., Pub. L. No. 102-563 (1992); Pub. L. No. 103-465 (1994); Pub. L. No. 104-295 (1996); Pub. L. No. 106-113 (1999); Pub. L. No. 108-429 (2004).

Therefore, "[t]he legislative history leaves no doubt that Congress was aware

of, and approved of," the ITC's statutory interpretation.  *See San Huan New Materials High Tech*, 161 F.3d at 1355.  Similarly, in *Disabled American Veterans*, this Court held that Congress ratified a Veterans Affairs Department practice because "[b]oth prior and subsequent to the enactment of [the statutory section at issue], Congress has done nothing to disturb this well-settled agency practice, and … this inaction was intentional."  419 F.3d at 1322.  The same is true here.  The majority's decision conflicts with this precedent by curtailing ITC authority that Congress deliberately left intact.

## II. THE MAJORITY'S DECISION DRASTICALLY CURTAILS THE REACH OF SECTION 337

The majority's holding, left unchecked, will substantially constrain the ITC's ability to perform its statutory function, allowing importers to circumvent the statute's critical protections against unfair trade practices.  Under that ruling, importers can aid and abet direct infringers with impunity—for example, importing an article and providing explicit instructions on how to assemble it into an infringing product or how to use it to perform an infringing method—and, so long as the final assembly or use only occurs after importation, the ITC is "powerless" to stop it.  Maj. Op. 13.  The majority has thus vitiated the ITC's ability to stop inducement at the border and has "legalize[d] the most common and least sophisticated form of circumvention, importation of the article in a disassembled [or not complete] state."  Dis. Op. 13.  As commentators have already recognized,

14

the decision "drastically curtail[s] the reach of 19 U.S.C. § 1337." Sokal & Craig, *Federal Circuit Discards the "Nexus" Test for Infringement at the ITC, Potentially Narrowing the Scope and Effectiveness of § 337*, 41 AIPLA Q.J. 637, 639 (2013).

The majority's assurances of a limited impact ring hollow. The majority allows that inducement can still be a basis for a violation—but only if the article infringes at time of importation or is not capable of non-infringing uses. Maj. Op. 21 n.4. Of course, in those situations, the importer will already violate Section 337 as a direct or contributory infringer. So the majority left no *independent* basis for preventing an importer from inducing infringement by importing its products. Moreover, the majority's direction to bring the matter in federal court is misplaced. *Id.* at 26. As the dissent notes, patentees might well face insurmountable difficulties regarding personal jurisdiction and enforcement. Dis. Op. 13-14. In any event, Congress intentionally provided the ITC as an alternative forum "to provide distinct relief at the border to stop imports of articles that are used in unfair trade." *Id.* at 14. The majority's decision substantially inhibits the ITC in performing its statutory function. This question of surpassing importance warrants this Court's reconsideration.

## CONCLUSION

For these reasons, this Court should grant panel or *en banc* rehearing.

Respectfully submitted,

<table>
<tr><td>

Clement J. Naples
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022-4843
  (212) 906-1200

</td><td>

/s/ Maximilian A. Grant
Maximilian A. Grant
Bert C. Reiser
Gabriel K. Bell
LATHAM & WATKINS LLP
555 Eleventh Street NW
Suite 1000
Washington, DC  20004
(202) 637-2200

</td></tr>
</table>

*Counsel for Intervenor Cross Match Technologies, Inc.*

February 21, 2014

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of February, 2014, I caused a copy of the foregoing Intervenor's Combined Petition for Rehearing and Rehearing *En Banc* to be served via the Court's CM/ECF system on all counsel registered to receive electronic notices.

I further certify that copies of the foregoing were sent by FedEx to the below attorneys who are not registered for CM/ECF service:

Ilana Rubel
Fenwick & West, LLP
555 California Street
12th Floor
San Francisco, CA 94104

Clint A. Gerdine
International Trade Commission
Office of the General Counsel
500 E Street, S.W.
Washington, DC 20436

/s/ Maximilian A. Grant
Maximilian A. Grant