# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## 2012-1170

SUPREMA, INC. and MENTALIX, INC.,

*Appellants*,

v.

INTERNATIONAL TRADE COMMISSION,

*Appellee*,

and

CROSS MATCH TECHNOLOGIES, INC.,

*Intervenor.*

———————————————————————

On Appeal from the United States International Trade Commission in
Investigation No. 337-TA-720

———————————————————————

## APPELLANTS' COMBINED RESPONSE TO JOINT PETITIONS FOR PANEL REHEARING AND REHEARING EN BANC

Darryl M. Woo
Jae Won Song
Ilana S. Rubel
Bryan A. Kohm
David M. Lacy Kusters
Bradley T. Meissner (admission pending)
FENWICK & WEST LLP
555 California St., 12th Floor
San Francisco, CA  94104
Telephone:   (415) 875-2300
Facsimile:   (415) 281-1350

*Attorneys for Appellants*
*SUPREMA, INC. and MENTALIX, INC.*

## <u>CERTIFICATE OF INTEREST</u>

Counsel for the Appellants, Suprema, Inc. and Mentalix, Inc., certifies the following:

1.    The full name of every party or amicus represented by me is:

Suprema, Inc.
Mentalix, Inc.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

As indicated in item 1

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

| Law Firm | Attorneys |
| --- | --- |
| Fenwick & West LLP | Darryl M. Woo<br>Jae Won Song<br>Ilana S. Rubel<br>Bryan A. Kohm<br>Bradley T. Meissner<br>David M. Lacy Kusters<br>Lauren E. Whittemore<br>Heather N. Mewes<br>Erin Simon<br>Ravi R. Ranganath<br>Clifford Webb |
| Adduci, Mastriani & Schaumberg LLP | V. James Adduci, II<br>Rowan E. Morris<br>Munford Page Hall, II |

|  | Jonathan J. Engler |
|  | Daniel F. Smith |

Dated:  March 25, 2014          By: _*/s/ Darryl M. Woo*_____
                                        Darryl M. Woo
                                        *Counsel for Appellants*

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ..................................................................................i

INTRODUCTION ...........................................................................................1

BACKGROUND ............................................................................................3

THE PANEL OPINION ...................................................................................6

ARGUMENT ...................................................................................................9

I.     THE PANEL CORRECTLY HELD THAT SECTION 337(a)(1)(B) REACHES ONLY "ARTICLES . . . THAT INFRINGE" ..................................................................................10

II.    THE PANEL CORRECTLY HELD THAT INDUCEMENT DOES NOT INVOLVE "ARTICLES . . . THAT INFRINGE" WHERE DIRECT INFRINGEMENT OCCURS ONLY AFTER IMPORTATION ..........................................................................12

       A.     The Panel Correctly Held that Inducement under 35 U.S.C. § 271(b) Is "Untied to an Article" ......................................12

       B.     The Panel Correctly Distinguished Inducement from Contributory Infringement ................................................15

       C.     The Panel's Decision Does Not Depend on When "Liability Attaches" for Inducement ....................................16

       D.     Section 337(d) Does Not Permit the Commission to Bar Future Imports of Non-Infringing Staple Articles based on Post-Importation Direct Infringement ..................................17

III.   THE PANEL PROPERLY REJECTED THE COMMISSION'S INTERPRETATION OF SECTION 337(a)(1)(B) ........................................19

       A.     Congress Did Not "Endorse" the Commission's Current Interpretation when It Amended Section 337 in 1988 ........................19

       B.     The Panel Correctly Concluded that Congressional Intent Is Clear from the Unambiguous Statutory Language ............................22

iii

# TABLE OF CONTENTS
## (Continued)

**Page**

IV.   THE PANEL'S DECISION WILL NOT IMPAIR THE
      COMMISSION'S ABILITY TO ENFORCE SECTION 337 ......................24

CONCLUSION .......................................................................................25

# TABLE OF AUTHORITIES

CASES

*Alloc, Inc. v. Int'l Trade Comm'n,*
  342 F.3d 1361 (Fed. Cir. 2003) ...........................................................23

*Braintree Labs., Inc. v. Nephro-Tech, Inc.*,
  81 F. Supp. 2d 1122 (D. Kan. 2000)....................................................18

*Broadcom Corp. v. Int'l Trade Comm'n,*
  542 F.3d 894 (Fed. Cir. 2008) ...........................................................23

*Certain Digital Set-Top Boxes & Components Thereof,*
  Inv. No. 337-TA-712, 2011 WL 2567284 (May 20, 2011)................................23

*Certain Elec. Devices,*
  Inv. No. 337-TA-724, 2012 WL 3246515 (Dec. 21, 2011)....................10, 11, 23

*Certain Minoxidil Powder, Salts & Compositions for Use in Hair Treatment,*
  Inv. No. 337-TA-367, 1988 WL 582867 (Feb. 16, 1988) ...................................20

*Certain Molded-In Sandwich Panel Inserts & Methods for their Installation,*
  Inv. No. 337-TA-99, 1982 WL 61887 (Apr. 9, 1982)........................................20

*Certain Optoelectronic Devices,*
  Inv. No. 337-TA-669, 2011 WL 7628061 (Mar. 12, 2010) ...............................23

*Corning Glass Works v. U.S. Int'l Trade Comm'n,*
  799 F.2d 1559 (Fed. Cir. 1986) ...........................................................22

*Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*,
  246 F.3d 1336 (Fed. Cir. 2001) ...........................................................14

*Dawson Chem. Co. v. Rohm & Haas Co.*,
  448 U.S. 176 (1980)...........................................................................15

*Disabled Am. Veterans v. Sec'y of Veterans Affairs,*
  419 F.3d 1317 (Fed. Cir. 2005) ...........................................................21

*ERBE Elektromedizin GmbH v. Int'l Trade Comm'n,*
  566 F.3d 1028 (Fed. Cir. 2009) ...........................................................23

# TABLE OF AUTHORITIES
## (Continued)

**Page**

*Frischer & Co. v. Bakelite Corp.*,
    39 F.2d 247 (C.C.P.A. 1930) .................................................................. 19

*Kyocera Wireless Corp. v. Int'l Trade Comm'n*,
    545 F.3d 1340 (Fed. Cir. 2008) ................................................... 22, 23

*Mentor H/S, Inc. v. Medical Device Alliance, Inc.*,
    244 F.3d 1365 (Fed. Cir. 2001) .......................................................... 14

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) ..................................................................... 14, 16

*Micron Tech., Inc. v. United States*,
    243 F.3d 1301 (Fed. Cir. 2001) .................................................. 20, 21

*Res-Care, Inc. v. United States*,
    735 F.3d 1384 (Fed. Cir. 2013) .......................................................... 10

*Sealed Air Corp. v. U.S. Int'l Trade Comm'n*,
    645 F.2d 976 (C.C.P.A. 1981) ............................................................ 13

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
    601 F.3d 1319 (Fed. Cir. 2010) .......................................................... 23

*Sony Corp. of Am. v. Univ. City Studios, Inc.*,
    464 U.S. 417 (1984) ........................................................................... 16

*Spansion, Inc. v. Int'l Trade Comm'n*,
    629 F.3d 1331 (Fed. Cir. 2010) ................................................... 16, 23

*Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co.*,
    754 F.2d 345 (Fed. Cir. 1985) ............................................................ 16

*TianRui Group Co. v. Int'l Trade Comm'n*,
    661 F.3d 1322 (Fed. Cir. 2011) .......................................................... 11

## TABLE OF AUTHORITIES
### (Continued)

**Page**

*Vizio, Inc. v. Int'l Trade Comm'n,*
 605 F.3d 1330 (Fed. Cir. 2010) ...........................................................23

*Young Eng'rs, Inc. v. U.S. Int'l Trade Comm'n,*
 721 F.2d 1305 (Fed. Cir. 1983) ..................................................19, 20

STATUTES

19 U.S.C. § 1337 ................................................................................*passim*

35 U.S.C. § 271 .................................................................................*passim*

35 U.S.C. § 283 ........................................................................................18

RULES

Fed. R. App. P. 35(a) ...............................................................................9

OTHER AUTHORITIES

Nonconfidential Brief of Appellee Int'l Trade Comm'n, *S3 Graphics Co. v. Int'l Trade Comm'n*, No. 12-1127, 2012 WL 2885851 (June 12, 2012) ...........18

## INTRODUCTION

On December 13, 2013, a Panel of this Court held that Congress meant what it said in Section 337(a)(1)(B) of the Tariff Act, 19 U.S.C. § 1337(a)(1)(B), which makes unlawful the sale for importation, importation, or sale after importation of "articles . . . that infringe" a valid and enforceable U.S. patent.  The Panel majority ruled that, based on the unambiguous statutory language, a violation of Section 337(a)(1)(B) cannot be based on inducement of patent infringement where, as in this case, the only imported "article" is a staple article of commerce and any direct infringement occurs only after the article is in the United States combined with another party's domestically developed software.  *See* Panel Op. at 13-26.

Appellee International Trade Commission (the "Commission") and Intervenor Cross Match Technologies, Inc. ("Cross Match") (collectively, "Appellees") now seek rehearing, contending that the Panel's holding is inconsistent with the statute's text and history, as well as with the Commission's supposedly longstanding interpretation of the statute.  Appellees also argue that the Panel's holding conflicts with various precedents of this Court, and that it will curtail the Commission's ability to police imports and permit infringers to circumvent the Commission's statutory authority.

Appellees' arguments provide no basis for rehearing of the Panel's modest, straightforward application of the plain language of Section 337.  First, the Panel's

determination that a party violates Section 337 only where an "article" infringes at the time of importation is dictated by the unambiguous statutory language (a point the Commission accepts). That determination recognizes and gives effect to the *in rem* character of Section 337 proceedings, Section 271(b)'s nature, and the nature of the Commission's principal remedy of exclusion enforced by Customs.

<u>Second</u>, the Panel correctly held that a finding that an importer induced infringement does not establish that there are "articles . . . that infringe," for purposes of Section 337(a)(1)(B). Inducement under 35 U.S.C. § 271(b) is unique in that unlike direct or contributory infringement, liability for inducement is based on intent and conduct that causes another's infringement. The inducer may be held liable without having made, used, sold, offered, or imported any infringing article, and Section 271(b) inducement alone thus does not run afoul of Section 337(a)(1)(B)'s proscription of "articles ... that infringe." The inapposite cases cited by Appellees are not to the contrary and not in conflict with the Panel's holding.

<u>Third</u>, the Commission's view—that inducement necessarily involves importation of "articles . . . that infringe"—is foreclosed by the plain language of both Section 337 and Section 271, and is not entitled to deference. In enacting the language at issue, Congress did not "endorse" the Commission's proffered interpretation of the statute, and because the statutory language is unambiguous, the Panel owed the Commission's interpretation no deference.

<u>Fourth</u>, the Panel's decision will not impair the Commission's ability to enforce Section 337.  Section 337 regulates the importation of articles, not mere intent.  The Commission has ample ability to prevent the importation of infringing articles through direct and contributory infringement.  But the Commission is not, and should not be, the default venue for all patent infringement claims with some international connection.  Where there is no importation of an infringing article, Congress has dictated that the federal courts are the proper venue in which to seek a remedy.  Appellees' interpretation of Section 337 would impermissibly expand the Commission's statutory authority to be nearly coextensive with the courts.

The Panel correctly applied Section 337, rehearing en banc is not necessary to ensure uniformity of the Court's decisions, and this matter does not otherwise warrant any rehearing.  Accordingly, the Court should deny Appellees' petitions.[1]

## **BACKGROUND**

This appeal arose out of a Commission investigation wherein Cross Match alleged, *inter alia*, that Texas-based fingerprint systems provider Mentalix and Korean hardware manufacturer Suprema each violated Section 337 of the Tariff Act by infringing Cross Match's U.S. Patent No. 7,203,344 (the "'344 Patent").

---

[1] If rehearing is granted, Appellants respectfully request that the Court consider also the alternative grounds for reversal of the Commission's underlying decision left unaddressed as moot by the Panel; namely, that the Commission's findings do not show willful blindness as a matter of law, and that the correct construction of claim 19 of the '344 Patent requires detection of a fingerprint's oval-like shape.

Suprema imports and sells fingerprint scanning devices and software development kits ("SDKs") to several customers in the United States, including Mentalix.  (A000227-230.)  Using Suprema's SDK, Mentalix adapted its domestically-created software, FedSubmit, for use with Suprema's scanners.  (A000212.)  Cross Match accused this and other combinations, as well as Suprema's SDK alone, of infringement.  (A000212.)  Notably, Mentalix's FedSubmit software does not work exclusively with Suprema scanners, but can also be used with fingerprint scanners manufactured by other companies.  (A000211-212.)  As well, Suprema's scanners can be, and are, used with software written by companies other than Mentalix.  (A000229.)

On June 17, 2011, the presiding administrative law judge ("ALJ") found, *inter alia*, a violation of Section 337 based on infringement of method claim 19 of the '344 Patent, by the combination of Suprema's scanners with Mentalix's FedSubmit software, which software was developed by Mentalix within the United States using free public software supplied by the U.S. Government through the National Institute of Standards and Technology.  (A000120-133, A000238.)

The Commission reviewed the ALJ's findings and determination.  In its October 24, 2011 opinion, the Commission ruled that Suprema's scanners and SDKs did not, standing alone or when combined with third-party software, infringe claim 19.  (A000220, A000229.)  The Commission also ruled that Suprema's

accused scanners and SDKs do not contributorily infringe. (A000227-229.) The Commission further found that the other accused combinations—Suprema scanners and SDKs with the software of other Suprema customers—did not infringe. (A000227-229.) The Commission thus found that the Suprema scanners and SDKs, the only articles actually imported, are capable of substantial non-infringing uses and, by definition, staple articles of commerce.

Despite finding the other combinations non-infringing, the Commission concluded that Mentalix directly infringed claim 19 of the '344 Patent by combining its FedSubmit software in the U.S. with the imported staple article scanners, and that Suprema somehow induced such infringement. (A000220-227.) Notably, the Commission did not find that Suprema had actual knowledge of the '344 Patent. Rather, the Commission found that Suprema was "willfully blind" to the '344 patent based on its failure to research references in another patent that Cross Match accused Suprema of infringing (which patent Suprema believed, and the Commission found, it did not infringe), and on Suprema's failure to obtain an opinion of counsel as to that other patent. (A000221-225.) The Commission found Suprema's inducement violated Section 337 because there was a "nexus" to importation of Suprema's non-infringing staple article scanners. (A000220-221.)

Having concluded that (1) Mentalix directly infringed claim 19 in the U.S.; and (2) Suprema induced such infringement, the Commission issued an order for

the exclusion of Suprema's staple article scanners where used to infringe claim 19, whether or not sold to or imported by Mentalix.  *See* Dkt. No. 75, ¶ 1.

## THE PANEL OPINION

As relevant here, the Panel held that the Commission's authority reaches only "articles . . . that infringe" a U.S. patent at the time of importation, *i.e.*, it reaches only the importation of infringing articles.  Because there can be no inducement of infringement unless there has been an act of direct infringement, the Panel reasoned, where there is no direct infringement until after importation, there are no "articles . . . that infringe" at the time of importation.  As such, the Panel held that an exclusion order based on a violation of Section 337(a)(1)(B)(i) may not be predicated on a theory of inducement of infringement where no direct infringement occurs until post-importation.  *See* Panel Op. at 4, 6.

The Panel first examined the statutory language of Sections 337(a)(1)(B) and (d) of the Tariff Act, which together authorize the Commission to exclude articles from entry into the United States based on patent infringement.  *See* Panel Op. at 15-16.  The Panel explained that "[t]he focus" of Section 337(a)(1)(B) "is on the infringing nature of the articles at the time of importation, not on the intent of the parties with respect to the imported goods," and that "[t]he same focus is evident also from the main remedy [the Commission] can grant, exclusion orders on the imported articles."  *Id.* at 16.  Based on its examination of the statutory

language, the Panel then concluded that "[e]xclusion orders based on violations of § 337(a)(1)(B)(i) thus pertain only to the imported goods and are necessarily based on the infringing nature of those goods when imported." *Id.* at 17.

The Panel next considered the relationship between Section 337 and 35 U.S.C. § 271, which defines unlawful patent infringement and provides the basis for finding any violation of Section 337(a)(1)(B). *See* Panel Op. at 18. The Panel observed that while Section 271 establishes three distinct bases under which a person may be liable for patent infringement, only two of those theories—direct infringement (Section 271(a)) and contributory infringement (Section 271(c))—are expressly defined by reference to an "article." *See id.* at 19. The third—inducement of infringement (Section 271(b))—is defined solely by reference to the conduct of the alleged inducer. *See id.*

Based on that fundamental distinction, the Panel concluded that "the statutory grant of authority in § 337 cannot extend to the conduct proscribed in § 271(b) where the acts of underlying direct infringement occur post-importation." Panel Op. at 20. The Panel explained:

> The patent laws essentially define articles that infringe in § 271(a) and (c), and those provisions' standards for infringement . . . must be met at or before importation in order for the articles to be infringing when imported. Section 271(b) makes unlawful certain conduct (inducing infringement) that becomes tied to an article only through the underlying direct infringement. Prior to the commission of any direct infringement, for purposes of inducement of infringement, there are no "articles . . . that infringe"—a prerequisite to the Commission's

7

> exercise of authority based on § 337(a)(1)(B)(i). Consequently, we
> hold that the Commission lacked the authority to enter an exclusion
> order directed to Suprema's scanners premised on Suprema's
> purported induced infringement . . . .

*Id*. at 20-21. In reaching that conclusion, the Panel rejected Appellees' arguments that this Court or the Commission had ever previously addressed or considered the issue presented to the Panel. *Id.* at 23. The Panel also rejected the argument that the Commission's interpretation of Section 337(a)(1)(B) was entitled to *Chevron* deference, based on its determination that Congress's intent was clear from the statutory language. *See id.* at 26 & n.5.

Finally, the Panel's holding was limited to the specific question presented: whether inducement can establish a violation of Section 337(a)(1)(B) where direct infringement occurs only after importation. *See* Panel Op. at 6, 21 n.4. Significantly, the Panel did not hold that inducement can never support a violation of Section 337(a)(1)(B). The Panel's decision also does not (and does not purport to) affect the application of Section 337 in cases of contributory infringement. *See id*. at 20-21 & n.4.

Given its conclusion as to Section 337, the Panel did not reach the issue of "willful blindness" or the proper construction of the '344 Patent, both of which supplied alternative bases for overturning the Commission's exclusion order. *See* Panel Op. at 6, 26.

Judge Reyna dissented from the relevant portion of the Panel's opinion.  In his view, despite Section 337(a)(1)(B)'s statutory limitation to "articles . . . that infringe," the Commission may exclude articles "tied to conduct giving rise to infringement liability," even if the imported articles themselves are non-infringing. Dissenting Op. at 10.  According to Judge Reyna, it is sufficient that the articles be "tied to conduct giving rise to infringement liability" even where, as here, the articles are non-infringing staple articles and the putative direct infringement only takes place in the U.S. after importation.  *See id.*[2]

## ARGUMENT

Petitions for rehearing en banc are disfavored and ordinarily will not be granted unless the petitioner shows that (1) en banc hearing is necessary to secure or maintain uniformity of the Court's decisions; or (2) the matter involves a question of "exceptional importance."  Fed. R. App. P. 35(a).

Appellees have not shown that panel rehearing or rehearing en banc is necessary or appropriate in this case.  As explained below, Appellees have failed to demonstrate that the Panel made any factual or legal error, that the Panel's opinion

---

[2] Judge Reyna's dissent also stated that "the majority takes the unnecessary step of addressing the legality of the Commission's authority to conduct a Section 337 investigation that is based on allegations of induced infringement."  Dissenting Op. at 4.  The majority, however, expressly stated that its ruling did not affect the Commission's authority to initiate or conduct investigations; rather, it limited only its ability to find a violation based on inducement where the direct infringement takes place after importation.  Panel Op. at 13 n.2.

conflicts with binding precedent, or that en banc review is otherwise necessary.

Accordingly, the Court should deny the Rehearing Petitions in their entirety.

## I.     THE PANEL CORRECTLY HELD THAT SECTION 337(a)(1)(B) REACHES ONLY "ARTICLES . . . THAT INFRINGE"

As noted above, the Panel began its analysis with the statutory language of

Section 337(a)(1)(B), and correctly concluded that a violation of Section

337(a)(1)(B) requires the existence of "articles . . . that infringe" a valid U.S.

patent "at the time of importation."  *See* Panel Op. at 15-16; *Res-Care, Inc. v.*

*United States*, 735 F.3d 1384, 1388 (Fed. Cir. 2013).

Cross Match asserts that the statutory text "expressly repudiates" the Panel's

interpretation of Section 337(a)(1)(B).  Cross Match Petition at 5.  It asserts that

because Section 337 can be violated by post-importation conduct—*i.e.*, the sale

after importation of an infringing article—Section 337 cannot require that the

subject article infringe at the time of importation.  *See id.*

Notably, the Commission does not join Cross Match on this argument.  To

the contrary, the Commission, like the Panel, concluded that Section 337

unambiguously requires that to establish a violation of the statute, infringement

"must be based on the articles as imported."  *Certain Elec. Devices*, Inv. No. 337-

TA-724, 2012 WL 3246515, at *9 (Dec. 21, 2011).

Cross Match's argument fails for two more reasons.  First, Cross Match's

interpretation is contrary to the plain language of the statute.  Section 337(a)(1)(B)

10

prohibits three distinct acts, but for all three, the statute inextricably links the infringing articles with the act of importation itself: (1) the sale *for importation* of articles that infringe a valid U.S. patent; (2) the *importation* of infringing articles; and (3) the sale within the United States *after importation* of infringing articles. *See* 19 U.S.C. § 1337(a)(1)(B). By directly linking each prohibited act to the importation of an infringing article, Congress made clear that in every instance, a violation of Section 337(a)(1)(B) must be based on the status of that article as imported. *See Certain Elec. Devices*, 2012 WL 3246515, at *9. Thus, the language on which Cross Match relies—"sale within the United States after importation . . . of articles . . . that infringe"—actually forecloses Cross Match's argument, because it necessarily requires that article sold be the same as the article imported, *i.e.*, an article that infringes a valid U.S. Patent.

Second, the Panel's plain language interpretation is consistent with the nature of the Commission's authority under Section 337 and the "main remedy" of exclusion (by U.S. Customs and Border Protection). *See* Panel Op. at 16-17. As this Court recognized, "[t]he focus of section 337 is on an inherently international transaction—importation," and Section 337 accordingly "only sets the conditions under which products may be imported into the United States." *TianRui Group Co. v. Int'l Trade Comm'n*, 661 F.3d 1322, 1329, 1330 (Fed. Cir. 2011). Cross Match's interpretation would sever the link between the infringing article and

importation, and thus improperly expand the scope of Section 337 to bar importation of all manner of staple articles that might, or might not, infringe when later combined in the U.S. with something else.  No authority supports such a sweeping interpretation of Section 337.

## II.  THE PANEL CORRECTLY HELD THAT INDUCEMENT DOES NOT INVOLVE "ARTICLES . . . THAT INFRINGE" WHERE DIRECT INFRINGEMENT OCCURS ONLY AFTER IMPORTATION

The Panel recognized that, unlike direct and contributory infringement, inducement of infringement is not defined by reference to an infringing article: "Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b).  Based on the clear statutory authority, the Panel concluded that where direct infringement occurs only after importation, a finding of inducement cannot sustain a violation of Section 337, because inducement alone does not create an article that infringes at the time of importation.

Cross Match and the Commission challenge that conclusion on several grounds.  As explained below, each of those challenges is meritless.

### A.  The Panel Correctly Held that Inducement under 35 U.S.C. § 271(b) Is "Untied to an Article"

Cross Match asserts that, because Sections 271(a), (b), and (c) all prohibit *conduct*, and because infringement liability under each of those sections ultimately depends on an article practicing the patented invention, the Panel erred by

distinguishing between infringement that is tied to a specific article and infringement that is not tied to an article.  Cross Match Petition at 7.

Cross Match misreads the Panel's opinion.  The critical distinction identified by the Panel is that both direct infringement and contributory infringement are *defined by* the infringer's *conduct with respect to a specific article*, while inducement is not.  *See* Panel Op. at 19.  Section 271(a) imposes liability for direct infringement on anyone who "*makes, uses, offers to sell, or sells **any patented invention***" without authority.  (Emphasis added.)  Thus, direct infringement is defined exclusively by conduct with respect to an article that meets all of the claims of a patented invention (*i.e.*, an infringing article).[3]  Similarly, Section 271(c) defines contributory infringement as any offer to sell or sale of a material, non-staple component of a patented invention.  As with direct infringement, contributory infringement is thus defined by conduct (the sale or offer to sell) with respect to a specific article (the material, non-staple component).

Inducement, by contrast, is defined ***only*** by the alleged inducer's conduct

---

[3] Cross Match also asserts that, because Section 271(a) prohibits conduct, it does not define an infringing article.  Cross Match Petition at 7.  Because of the *in rem* nature of the Commission's jurisdiction under Section 337, it is common in the importation context to refer to a good that infringes a patent, rather than to conduct that infringes a patent.  For example, well before the 1988 amendments to the Tariff Act added the language concerning "articles that . . . infringe," this Court's predecessor employed that formulation, referring to instances in which "the imported product is alleged to infringe" a patent.  *See Sealed Air Corp. v. U.S. Int'l Trade Comm'n*, 645 F.2d 976, 986 (C.C.P.A. 1981).

and intent.  Section 271(b) provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer"; it does not require the inducer to engage in any act with respect to a patented invention, a non-staple component of a patented invention, or any other article.  As the Panel recognized, inducement is thus unique because the necessary, direct connection between conduct and an article that defines direct infringement and contributory infringement is wholly absent from Section 271(b).  Thus, the Panel did not err in holding inducement under Section 271(b) is "untied" to an article.

The Commission asserts that the Panel's holding conflicts with *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 940 n.13 (2005), *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1351 (Fed. Cir. 2001), and *Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 244 F.3d 1365, 1379 (Fed. Cir. 2001), because it supposedly fails to acknowledge "that infringement under § 271(b) may be, and often is, directly tied to articles."  Commission Petition at 8-9.  But the Panel plainly did not state or conclude that inducement *cannot* be based on conduct involving an infringing article.  The Panel merely found that inducement *is not defined by* conduct with respect to a specific article.  The cases cited by the Commission simply involved factual situations in which the inducing acts involved distribution of a product later used to infringe.  None of those cases stands for the proposition that inducement

14

must involve an infringing article, and nothing in those cases conflicts with the Panel's holding.

**B.    The Panel Correctly Distinguished Inducement from Contributory Infringement**

Cross Match next argues that, because an underlying act of infringement is a prerequisite for civil liability for both inducement and contributory infringement, there is no basis for treating the two differently for purposes of Section 337.  Cross Match Petition at 9.

Cross Match again ignores the statutory distinction between inducement and contributory infringement, and the language of Section 337(a)(1)(B), which depends not on whether the elements of a civil claim under 35 U.S.C. § 271 are satisfied at importation, but on whether there are "articles . . . that infringe" at the time of importation.  As inducement is not defined by conduct with respect to an infringing article, a finding of inducement does not establish that the infringer imported any article, let alone one that infringed at the time of importation.

Contributory infringement is materially different, as it involves the infringer's sale, importation, or other act with respect to a non-staple, material component of a patented invention that has no non-infringing uses.  The patent holder has the same limited monopoly over the distribution of such components as she does over the distribution of the patented invention itself.  *See Dawson Chem. Co. v. Rohm & Haas Co.*, 448 U.S. 176, 201 (1980) ("[A]s a lawful adjunct of his

patent rights, a [patent holder has] limited power to exclude others from competition in nonstaple goods."); *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 441 (1984) ("A finding of contributory infringement is normally the functional equivalent of holding that the disputed article is within the monopoly granted to the patentee.").  Accordingly, contributory infringement necessarily involves the infringer's actions regarding an article that infringes, even where the predicate direct infringement may occur only after importation.  The Panel's distinction between contributory infringement and inducement is thus consistent with, and mandated by, the relevant statutory language.[4]

### C.  The Panel's Decision Does Not Depend on When "Liability Attaches" for Inducement

The Commission asserts that the Panel *implicitly* held that liability for inducement does not attach at the time of the inducing party's culpable act.  *See* Commission Petition at 9-10.  The Commission then claims that implied holding conflicts with the Supreme Court's decision in *Grokster* and with *Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co.*, 754 F.2d 345, 348 (Fed. Cir. 1985), where this Court held that, in cases of inducement, 35 U.S.C. § 286's six-year limitation on suits for damages runs from the date of the inducer's culpable acts, not from the

---

[4] Cross Match's reliance on *Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331 (Fed. Cir. 2010), is misplaced.  *Spansion*, a contributory infringement case, involved the importation of an infringing article:  a nonstaple, material component of the patented invention; nothing in *Spansion* conflicts with the Panel's decision. *See id.* at 1353-54.

time of direct infringement.  *See* Commission Petition at 10.

As the Commission tacitly acknowledges, nothing in the Panel's opinion actually purports to determine when personal liability "attaches" for inducement of infringement.[5]  Nor is any such conclusion implicit in the Panel's holding.  The Commission's argument is based on the flawed strawman premise that a Section 337 violation is triggered by the timing of a party's "culpable act."  But the plain language of Section 337 forecloses that argument.  As the Panel held, a violation of Section 337(a)(1)(B) is triggered by the status of an *article* at the time of importation, *i.e.*, importation of an infringing article.  *See* Panel Op. at 17.  The timing of when a party's personal liability "attaches" is irrelevant.

### D.  Section 337(d) Does Not Permit the Commission to Bar Future Imports of Non-Infringing Staple Articles based on Post-Importation Direct Infringement

Appellees also contend that, once the Commission found a completed act of direct infringement of the '344 Patent by Mentalix, and inducement by Suprema, the Commission was then empowered by Section 337(d) to exclude future imports of Suprema's staple, non-infringing scanners to prevent future acts of domestic infringement.  *See* Cross Match Petition at 7-8; Commission Petition at 14-15.

Appellees' argument based on Section 337(d) is entirely circular.  The

---

[5] Rather, the Panel merely made the unassailable factual observation that, where direct infringement has not yet occurred, there can be no liability for inducement under Section 271(b).  Panel Op. at 20.

Commission's authority to exclude articles under Section 337(d) requires an underlying violation of Section 337(a)(1)(B).  *See* 19 U.S.C. § 1337(d) ("If the Commission determines . . . that there is a violation of this section, it shall direct that the articles concerned . . . be excluded from entry into the United States ….").  As the Panel held, however, there was no underlying violation of Section 337 in this case, because there is no infringing article imported; Suprema does not import infringing scanners.  *See* Panel Op. at 21.[6]  Nor were those scanners found to infringe after importation when combined with software other than Mentalix's.  Contrary to Appellees' arguments, nothing in Section 337 permits the Commission to use post-importation domestic infringement to justify the future exclusion of staple articles to prevent possible future domestic infringement.[7]

---

[6] The Commission's reliance on 35 U.S.C. § 283 and *Braintree Labs., Inc. v. Nephro-Tech, Inc.*, 81 F. Supp. 2d 1122 (D. Kan. 2000), is misplaced.  Section 283 expressly grants district courts the authority to issue injunctions in accordance with equitable principles to *prevent* patent infringement.  The Commission's authority under Section 337(d) of the Tariff Act, by contrast, is limited to excluding articles that infringe a valid U.S. patent.  The Commission also claims that a provision in the exclusion order giving U.S. Customs and Border Protection ("CBP") discretion to admit scanners if Appellants certify that they are not covered by the order should "alleviate" the Panel's concerns about the order.  Commission Petition at 14-15.  But the Commission cannot cure its failure to establish a violation of Section 337 by tempering its exclusion order to give CBP discretion to admit Suprema's scanners.  Nor should Suprema be required to make a certification concerning what third parties will or will not do with its scanners post-importation.

[7] *See* Nonconfidential Brief of Appellee Int'l Trade Comm'n, *S3 Graphics Co. v. Int'l Trade Comm'n*, No. 12-1127, 2012 WL 2885851, at *28 (June 12, 2012) ("The plain language of section 337 does not make it unlawful to import articles

## III.   THE PANEL PROPERLY REJECTED THE COMMISSION'S INTERPRETATION OF SECTION 337(a)(1)(B)

### A.   Congress Did Not "Endorse" the Commission's Current Interpretation when It Amended Section 337 in 1988

Section 337 made no express mention of patent infringement prior to 1988, when Congress amended the Tariff Act to include the language at issue prohibiting the importation "of articles . . . that infringe" a U.S. patent.  19 U.S.C. § 1337(a)(1)(B).  Based on an isolated statement in a conference report and several pre-1988 cases and Commission decisions, Appellees contend that Congress "endorsed" the Commission's view that it may exclude articles based on inducement of infringement where the direct infringement occurs only post-importation.  Commission Petition at 11-12; Cross Match Petition at 11-14.

Appellees' "endorsement" argument fails for at least two reasons.  <u>First</u>, the authorities cited by Appellees do not show a Commission practice of excluding articles based on inducement alone.  The Commission cites *Frischer & Co. v. Bakelite Corp.*, 39 F.2d 247 (C.C.P.A. 1930), and *Young Engineers, Inc. v. U.S. International Trade Commission*, 721 F.2d 1305 (Fed. Cir. 1983), but both cases involved determinations that the products being imported into the United States themselves directly infringed the patents at issue, and so neither decision stands for the proposition advanced.  *See Frischer*, 39 F.2d at 259 ("The appellants were

---

that *do not infringe*, nor does it prohibit importing general purpose articles that may *later* be used to infringe . . . .").

importing material which constituted an infringement . . . ."); *Young Eng'rs*, 721

F.2d at 1308-09 (underlying Commission order prohibited importation of products

that directly infringed patent).[8]  Cross Match's citation to *Certain Minoxidil*

*Powder, Salts & Compositions for Use in Hair Treatment*, Inv. No. 337-TA-367,

1988 WL 582867 (Feb. 16, 1988), is similarly unavailing, as each entity there

found to violate Section 337 also either directly or contributorily infringed.

Second, even if those authorities did support the Commission's view,

Appellees have provided no evidence that Congress knew of the Commission's

supposed interpretation when it amended Section 337 in 1988.  *Micron Tech., Inc.*

*v. United States*, 243 F.3d 1301, 1311-12 (Fed. Cir. 2001) (finding no implied

Congressional ratification where party "presented no evidence" that Congress

knew of particular agency interpretation).  Appellees cite to a single statement

from the Conference Report for the 1988 Tariff Act amendments, merely stating

that "'[i]n changing the wording with respect to importation or sale, the conferees

do not intend to change the interpretation or implementation of current law as it

applies to the importation or sale of articles that infringe certain U.S. intellectual

property rights.'"  Cross Match Petition at 13 (quoting H.R. Rep. No. 100-576, at

---

[8] The underlying Commission decision in *Young Engineers* further makes clear
that the imported products at issue directly infringed.  *See Certain Molded-In*
*Sandwich Panel Inserts & Methods for their Installation*, Inv. No. 337-TA-99,
1982 WL 61887 (Apr. 9, 1982).

633 (1988) (Conf. Rep.); Commission Petition at 12 (same). But a single, ambiguous reference to "current law" in a committee report, with no mention of the specific agency interpretation at issue—or even any reference to the issue for which Congress supposedly adopted the Commission's interpretation—is manifestly insufficient to show that Congress adopted the Commission's interpretation of Section 337. *See Micron Tech., Inc.*, 243 F.3d at 1312 (ambiguous references to "current practice" in congressional report "fall far short of demonstrating that Congress was aware of [an agency's] interpretation, or that it endorsed it").[9]

For the same reasons, Cross Match's suggestion that Congress endorsed the Commission's post-1988 interpretation of Section 337 by failing to amend the language in question is also meritless. Cross Match has provided no evidence of either a settled agency practice of finding violations of Section 337 based solely on inducement of post-importation domestic infringement, or of Congressional awareness of any such practice.

---

[9] *Disabled American Veterans v. Secretary of Veterans Affairs*, 419 F.3d 1317, 1322-23 (Fed. Cir. 2005), on which Cross Match relies, is readily distinguishable. In that case, unlike here, Congress was aware of the agency regulation in question, and it "explicitly recognized and endorsed that practice in both the legislative history and the statutory text." *Id.* at 1323.

**B.     The Panel Correctly Concluded that Congressional Intent Is Clear from the Unambiguous Statutory Language**

Appellees also argue that the Panel erred in failing to give *Chevron* deference to the Commission's supposed longstanding interpretation of Section 337 as authorizing the Commission to exclude articles based on inducement even where direct infringement occurs only post-importation.  *See* Commission Petition at 11-13; Cross Match Petition at 8-11.

Because the Panel found that the unambiguous statutory language speaks directly to the requirements for a violation of Section 337(a)(1)(B), the Panel properly refused to give *Chevron* deference to the Commission's interpretation of Section 337.[10]  Panel Op. at 15-18, 26 & n.5; *see Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1355 (Fed. Cir. 2008) (where Congress has directly spoken to issue, "the court must give effect to the unambiguously expressed intent of Congress") (internal quotation marks omitted).

Significantly, Appellees do not explain how the statutory language at issue is ambiguous, such that *Chevron* deference would be warranted.  Appellees instead simply cite a series of cases and Commission decisions that Appellees contend show that the Commission's interpretation of the statute is "reasonable" and has

---

[10] Insofar as this case also involves the interpretation of 35 U.S.C. § 271, this Court also owes no deference to the Commission's interpretation of that statute.  *Corning Glass Works v. U.S. Int'l Trade Comm'n*, 799 F.2d 1559, 1565 n.5 (Fed. Cir. 1986) (court owes no deference to Commission's interpretation of patent statutes).

been affirmed by this Court. But none of the decisions cited by Appellees actually presented this Court with the question involved in this case. In addition, all of the opinions cited by Appellees involving inducement of infringement also involved findings of either direct or contributory infringement (or no infringement at all), and so inducement was not necessary to support those decisions.[11] Appellees do not point to a single case in which inducement of post-importation direct infringement provided the sole basis for the exclusion of products under Section 337. Accordingly, this Court has not previously affirmed or deferred to the Commission's interpretation of Section 337(a)(1)(B).

---

[11] *See Spansion*, 629 F.3d at 1353-55 (contributory infringement); *Vizio, Inc. v. Int'l Trade Comm'n*, 605 F.3d 1330, 1335, 1343 (Fed. Cir. 2010) (direct infringement); *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1323, 1331 (Fed. Cir. 2010) (direct infringement); *ERBE Elektromedizin GmbH v. Int'l Trade Comm'n*, 566 F.3d 1028, 1033, 1037 (Fed. Cir. 2009) (no direct or indirect infringement); *Certain Digital Set-Top Boxes & Components Thereof*, Inv. No. 337-TA-712, 2011 WL 2567284, at *136 (May 20, 2011) (direct and contributory infringement); *Certain Optoelectronic Devices*, Inv. No. 337-TA-669, 2011 WL 7628061, at *79 (Mar. 12, 2010) (direct and contributory infringement); *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1374 (Fed. Cir. 2003) (no infringement); *Certain Elec. Devices*, 2012 WL 3246515, at *12-13 (finding no indirect infringement). *Kyocera Wireless Corp.* involved an exclusion order based only on inducement, but the facts of that case involved direct infringement at the time of importation. *See* 545 F.3d at 1345-46. *Broadcom Corp. v. International Trade Commission*, 542 F.3d 894, 896, 898-900 (Fed. Cir. 2008), involved the same underlying facts and a finding of no direct infringement or inducement.

## IV.    THE PANEL'S DECISION WILL NOT IMPAIR THE COMMISSION'S ABILITY TO ENFORCE SECTION 337

Appellees finally argue that the Panel's decision will negatively impact the Commission's ability to fulfill its statutory function.  Cross Match asserts that, because the Panel's decision limits the circumstances under which the Commission can find a violation of Section 337(a)(1)(B), the decision will "allow[] importers to circumvent the statute's critical protections against unfair trade practices."  Cross Match Petition at 14.  The Commission (along with *amici* Nokia Corporation and Nokia USA) suggests that the Panel's decision may also foretell the demise of Section 337 violations based on contributory infringement.  Commission Petition at 4 n.3.  Neither concern provides a basis for rehearing.

Cross Match's speculative claim that the Panel's decision will permit importers to circumvent Section 337 with impunity is dramatically overblown.  Indeed, that Cross Match could not identify a single case in which a Commission exclusion order was based *solely* on a party's inducement of post-importation direct infringement suggests that the actual impact of the Panel's decision on the Commission's practice will be minimal.  Moreover, even in cases that are outside the reach of Section 337, the patent holder may still seek relief for all forms of patent infringement via a civil action in the district court.  Finally, and most importantly, the Panel properly decided only the case before it.  This case simply does not involve the hypothetical "circumvention" feared by Cross Match, and the

24

Panel had no occasion to recommend a response to such a hypothetical case.  This case involved the exclusion of staple articles (found by the Commission to have substantial non-infringing uses) merely because those articles could be combined post-importation with domestically developed software in a manner that infringes a U.S. patent.  The Panel applied Section 337(a)(1)(B) to those facts, and it reached the correct result based on the plain language of the statute.  Indeed, any contrary decision would have opened a Pandora's Box of conduct-based litigation untethered to articles or the *in rem* nature of jurisdiction under Section 337.

Finally, the Commission's and *amici*'s concerns that the Panel's opinion also precludes violations of Section 337 based on contributory infringement are also meritless.  The Panel's opinion on its face does not purport to extend to contributory infringement, and, in fact, the Panel's reasoning affirmatively demonstrates that contributory infringement can be used to establish a Section 337 violation, even where direct infringement occurs only after importation.  *See* Panel Op. at 18-21 & n.4.  Rehearing is thus neither necessary nor warranted to clarify the Panel's opinion.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the rehearing petitions in their entirety.

Dated:  March 25, 2014                    Respectfully submitted,


                                          */s/ Darryl M. Woo*
                                          Darryl M. Woo
                                          Ilana Rubel
                                          Bryan A. Kohm
                                          David M. Lacy Kusters
                                          Bradley T. Meissner (admission pending)

                                          FENWICK & WEST LLP
                                          555 California Street, 12th Floor
                                          San Francisco, CA  94104
                                          Telephone:(415) 875-2300
                                          Facsimile: (415) 281-1350

                                          Jae Won Song
                                          FENWICK & WEST LLP
                                          801 California Street
                                          Mountain View, CA  94041
                                          Telephone:  (650) 988-8500
                                          Facsimile:  (650) 938-5200

                                          Attorneys for Appellants
                                          *Suprema, Inc. and Mentalix, Inc.*

# <u>CERTIFICATE OF SERVICE</u>

I, Darryl M. Woo, hereby certify that on March 25, 2014, caused the

foregoing **APPELLANTS' COMBINED RESPONSE TO JOINT PETITIONS**

**FOR PANEL REHEARING AND REHEARING EN BANC** to be served on

the following parties as indicated below:

| | |
|---|---|
| Maximillian A. Grant<br>Gabriel Bell<br>Michael David<br>**LATHAM & WATKINS LLP**<br>555 Eleventh Street, NW, Ste. 1000<br>Washington, DC  20004-1304<br>max.grant@lw.com; gabriel.bell@lw.com;<br>michael.david@lw.com<br>**By Electronic CM/ECF**<br>**By US MAIL [courtesy copy]** | Clement Naples<br>**LATHAM & WATKINS LLP**<br>885 Third Avenue, Suite 1000<br>New York, NY  10022-4802<br>clement.naples@lw.com<br>**By Electronic CM/ECF**<br>**By US MAIL [courtesy copy]** |
| Clark S. Cheney (clark.cheney@usitc.gov)<br>Andrea Casson (andrea.casson@usitc.gov)<br>Dominic L. Bianchi<br>(dominic.bianchi@usitc.gov)<br>Office of General Counsel<br>**U.S. INTERNATIONAL TRADE COMMISSION**<br>500 E Street, SW, Suite 707<br>Washington, DC  20436<br>Fax:  (202) 205-3111<br>**By Electronic CM/ECF**<br>**By US MAIL [courtesy copy]** | John D. Haynes<br>**ALSTON & BIRD**<br>1201 West Peachtree Street<br>One Atlantic Center<br>Atlanta, GA  30309<br>john.haynes@alston.com<br>**By Electronic CM/ECF**<br>**By US MAIL [courtesy copy]** |

| | |
|---|---|
| Daryl Joseffer, Esq.<br>**KING &SPALDING LLP**<br>1700 Pennsylvania Ave., NW<br>Washington, DC 20006<br>djoseffer@kslaw.com<br>**By Electronic CM/ECF**<br>**By US MAIL [courtesy copy]** | Adam Conrad<br>King & Spalding LLP<br>100 N. Tryon Street<br>Charlotte, NC  28202<br>aconrad@kslaw.com<br>**By Electronic CM/ECF**<br>**By US MAIL [courtesy copy]** |

Dated:  March 25, 2014            By:   _/s/ Darryl M. Woo_____
                                            Darryl M. Woo