No. 2012-1170

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

———————————

SUPREMA, INC. and MENTALIX, INC.,

*Appellants*,

v.

INTERNATIONAL TRADE COMMISSION,

*Appellee*,

CROSS MATCH TECHNOLOGIES, INC.,

*Intervenor*.

———————————

Appeal from the United States International Trade Commission in
Investigation No. 337-TA-720

———————————

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE
IN SUPPORT OF THE COMMISSION**

———————————

JOYCE R. BRANDA
  *Acting Assistant Attorney General*

SCOTT R. MCINTOSH
MARK R. FREEMAN
  (202) 514-5714
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7228*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, D.C.  20530*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ......................................................... 1

INTEREST OF THE UNITED STATES .................................................... 5

QUESTION PRESENTED ...................................................................... 5

ARGUMENT ......................................................................................... 6

A.    The Commission Reasonably Interprets Section 337 to Prohibit the Importation of Articles in a Manner That Actively Induces Patent Infringement in the United States ..................................................................... 6

    1.    The Commission Has Consistently Construed Section 337 to Prohibit Both Direct and Indirect Patent Infringement in Import Trade ............. 6

    2.    Congress Delegated to the Commission the Task of Translating the *In Personam* Prohibitions of the Patent Laws into the *In Rem* Context of Section 337 Exclusion Proceedings ................................................. 11

    3.    The Commission's Construction of Section 337 Is Reasonable and Entitled to Deference .................... 14

B.    The Panel's Contrary Ruling Is Unpersuasive .............................. 20

    1.    The Panel Mistakenly Believed That the Patent Act Defines "Articles That . . . Infringe" .......... 20

    2.    The Panel Erred in Suggesting That an Exclusion Order Cannot Depend on the Culpable Intent of the Importer ................................... 23

3.      The Panel Incorrectly Believed That Imported
        Articles Cannot Infringe Under Section 271(b)
        If Direct Infringement Occurs After Importation ....... 27

CONCLUSION ......................................................................... 33

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:** <span style="float:right">**Page**</span>

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
  365 U.S. 336 (1961) ....................................................... 30, 31

*Certain Apparatus for the Continuous Production of
  Copper Rod*, Inv. No. 337–TA–52, USITC Pub. 1017
  (Nov. 23, 1979) ...................................................................... 7

*Certain Electronic Devices*,
  Inv. No. 337-TA-724, 2012 WL 3246515 (Dec. 21, 2011) ............... 10, 15

*Certain Molded-In Sandwich Panel Inserts and Methods
  for Their Installation*, Inv. No. 337-TA-99, USITC
  Pub. 1246 (Apr. 9, 1982), *aff'd, Young Eng'rs, Inc.* v. *ITC*,
  721 F.2d 1305 (Fed. Cir. 1983) .................................................. 7

*Certain Surveying Devices*, Inv. No. 337-TA-68, USITC
  Pub. 1085, 0080 WL 594364 (July 7, 1980) .......................................... 7

*Corning Glass Works v. ITC*,
  799 F.2d 1559 (Fed. Cir. 1986) ...................................................... 5, 13, 14

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*,
  246 F.3d 1336 (Fed. Cir. 2001) ...................................................... 16

*Deepsouth Packing Co. v. Laitram Corp.*,
  406 U.S. 518 (1972) ................................................................ 20

*Dobbins's Distillery v. United States*,
  96 U.S. 395 (1878) ................................................................ 27

*Enercon GmbH v. ITC*,
  151 F.3d 1376 (Fed. Cir. 1998) .................................................... 13

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    131 S. Ct. 2060 (2011) ............................................................ 15, 24, 27

*Henry v. A.B. Dick Co.*,
    224 U.S. 1 (1912) ......................................................................... 15

*In re Orion Co.*,
    71 F.2d 458 (C.C.P.A. 1934) ...................................................... 6, 7

*Kyocera Wireless Corp. v. ITC*,
    545 F.3d 1340 (Fed. Cir. 2008) ...................................................... 12

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012) ........................................................ 17

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
    134 S. Ct. 2111 (2014) .............................................................. 28, 29

*Lucent Technologies, Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ...................................................... 17

*Microsoft Corp. v. AT&T Corp.*,
    550 U.S. 437 (2007) ....................................................................... 20

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    711 F.3d 1348 (Fed. Cir. 2013) ...................................................... 17

*Sealed Air Corp. v. ITC*,
    645 F.2d 976 (C.C.P.A. 1981) ................................................... 12, 25

*Spansion, Inc. v. ITC*,
    629 F.3d 1331 (Fed. Cir. 2010) ........................................................ 9

*TianRui Grp. Co. v. ITC*,
    661 F.3d 1322 (Fed. Cir. 2011) ...................................................... 13

*United States v. Bajakajian*,
    524 U.S. 321 (1998) ....................................................................... 27

*Vizio, Inc. v. ITC,*
   605 F.3d 1330 (Fed. Cir. 2010) ................................................. 9

*Waterloo Distilling Corp. v. United States,*
   282 U.S. 577 (1931) .................................................................. 27

*Whitman v. American Trucking Ass'ns,*
   531 U.S. 457 (2001) .................................................................. 4

*Young Eng'rs, Inc. v. ITC,*
   721 F.2d 1305 (Fed. Cir. 1983) ............................................ 7, 32

**Statutes:**

Omnibus Trade and Competitiveness Act of 1988,
   Pub. L. No. 100-418, Tit. I, Subtit. C, Pt. 3:

   § 1341, 102 Stat. 1211 .......................................................... 8

   § 1341(a)(2), 102 Stat. 1212 ................................... 3, 4, 18, 32

   § 1341(b), 102 Stat. 1212 ........................................... 3, 4, 32

   § 1342, 102 Stat. 1212 ....................................................... 8, 9

19 U.S.C. § 1330 *et seq.* ........................................................... 5

19 U.S.C. § 1333(g) .................................................................. 5

19 U.S.C. § 1337 ....................................................................... 6

19 U.S.C. § 1337(a)(1)(B)(i) ............................................ 1, 5, 9

19 U.S.C. § 1337(a)(1)(B)(ii) ................................................. 25

35 U.S.C. § 154(a) .................................................................. 21

35 U.S.C. § 271(a) ................................................................ 12, 20, 21, 25

35 U.S.C. § 271(b) ...................................................................... *passim*

35 U.S.C. § 271(c) .............................................................................. 12, 21

35 U.S.C. § 271(e)(2) ................................................................................ 12

35 U.S.C. § 271(f) ...................................................................................... 12

35 U.S.C. § 271(f)(1) ................................................................................ 21

35 U.S.C. § 271(f)(2) ................................................................................ 21

35 U.S.C. § 271(g) .............................................................................. 12, 21

35 U.S.C. § 271(h) .................................................................................... 21

35 U.S.C. § 281 ........................................................................................ 15

35 U.S.C. § 287(c) .................................................................................... 16

**Legislative Materials:**

H.R. Conf. Rep. No. 100-576 (1988) ............................................................ 9

**Other Authorities:**

Rufus Waples, *A Treatise on Proceedings In Rem* (1882) ........................ 27

## INTRODUCTION AND SUMMARY

The government respectfully submits this brief in response to the Court's order of June 11, 2014, inviting the Attorney General to express the views of the United States as amicus curiae. In the view of the United States, the International Trade Commission's interpretation of Section 337 is reasonable, consistent with the text and history of the Tariff Act, and entitled to deference.

Congress charged the International Trade Commission ("Commission" or "ITC") with the responsibility to exclude from the United States "articles that . . . infringe a valid and enforceable United States patent." 19 U.S.C. § 1337(a)(1)(B)(i). The Commission reasonably interprets that statutory command to prohibit the importation not merely of fully assembled patented inventions, but of *all* articles for which infringement liability may be imposed under the Patent Act. No one disputes that, in an ordinary civil action for infringement in district court, a person who imports articles in an intentional scheme to induce infringement of a patent within the United States "shall be liable as an infringer." 35 U.S.C. § 271(b). The Commission sensibly construes Section 337 *in pari materia* with that undisputed interpretation of the Patent Act,

treating the articles imported in such an infringing scheme as "articles that . . . infringe."

The Commission acted well within its discretion in adopting that construction of the Tariff Act.  The Commission has no choice but to exercise interpretative judgment in applying Section 337(a)(1)(B)(i).  As appellants recognize (Br. 30), nothing in the Tariff Act defines the phrase "articles that . . . infringe."  Nor do the patent laws speak in terms of infringing "articles."  Under the Patent Act, *persons* infringe, not *things*.  An article by itself cannot literally "infringe" under Section 271 any more than a tract of land can trespass.  Thus, in enacting Section 337(a)(1)(B)(i), Congress necessarily expected and intended that the Commission would interpret "articles that . . . infringe" in a manner that appropriately translates the domestic *in personam* liability provisions of the Patent Act into the *in rem* framework of exclusion proceedings under the Tariff Act.

The Commission's construction of Section 337 reasonably resolves that conceptual dilemma by construing the phrase "articles that . . . infringe" to encompass any article whose importation would support infringement liability under the Patent Act, including articles imported

for the purpose of inducing patent infringement.  That interpretation is consistent with the plain language of both Section 337 and Section 271(b) and with the underlying policies and purposes of the trade laws. And it has the significant benefit of preventing importers from evading the prohibitions of the Tariff Act through "the most common and least sophisticated form of circumvention, importation of the article in a disassembled state."  Dis. op. 13 (Reyna, J., dissenting in part).

There is little doubt, moreover, that the Commission's interpretation best effectuates Congress's intent in 1988 when it enacted Section 337(a)(1)(B)(i).  The parties' briefs debate the meaning of various passages drawn from the relevant committee reports.  But the public law itself recites Congress's purpose.  In an uncodified portion of the 1988 legislation, Congress expressly found that Section 337 "has not provided United States owners of intellectual property rights with adequate protection against foreign companies violating such rights," and declared that the purpose of the 1988 legislation was "to make [Section 337] a more effective remedy for the protection of United States intellectual property rights."  Omnibus Trade and Competitiveness Act of 1988,

Pub. L. No. 100-418, Tit. I, Subtit. C, Pt. 3, § 1341(a)(2), (b), 102 Stat. 1212 ("1988 Act").

That statutory declaration of purpose is impossible to reconcile with the panel's view that Congress intended to render the Commission "powerless to remedy acts of induced infringement." Slip op. 13. By the time of the 1988 amendments, the Commission had for many years construed Section 337 to prohibit, as an unfair trade practice, the active inducement of patent infringement in the United States. It is difficult to imagine why a Congress seeking to *enhance* the protection of intellectual property rights in Commission proceedings would simultaneously have acted to *strip* the Commission of its power to redress such infringement. And it is even more doubtful that Congress would have done so silently and obliquely, without any explanation or even acknowledgment in the legislative history. Congress does not, as the Supreme Court has observed, "hide elephants in mouseholes." *Whitman* v. *American Trucking Ass'ns*, 531 U.S. 457, 468 (2001).

In sum, the Commission construes Section 337 to provide remedies against the same forms of infringement at the border that district courts are empowered to redress through *in personam* infringement ac-

4

tions within the United States. Because that interpretation is reasonable and consistent with "the language, policies and legislative history" of the Tariff Act, it is entitled to deference. *Corning Glass Works* v. *ITC*, 799 F.2d 1559, 1565 (Fed. Cir. 1986).

## INTEREST OF THE UNITED STATES

The International Trade Commission is an independent agency of the United States charged with investigating and remedying violations of the Tariff Act of 1930. See 19 U.S.C. § 1330 *et seq.* Although the Commission is represented in this Court by its own attorneys, Congress has authorized the Department of Justice to represent the Commission on request, see 19 U.S.C. § 1333(g), and the Department ordinarily does so in the Supreme Court. On June 11, 2014, this Court invited the Attorney General to express the views of the United States in this en banc proceeding.

## QUESTION PRESENTED

Section 337 of the Tariff Act of 1930, as amended, prohibits the importation into the United States of, *inter alia*, "articles that . . . infringe a valid and enforceable United States patent." 19 U.S.C. § 1337(a)(1)(B)(i). Under the Patent Act, "[w]hoever actively induces in-

5

fringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b).

The question presented is whether the Commission reasonably interprets Section 337 to authorize the exclusion of articles imported into the United States in a manner that constitutes active inducement of domestic patent infringement.[1]

## ARGUMENT

### A. The Commission Reasonably Interprets Section 337 to Prohibit the Importation of Articles in a Manner That Actively Induces Patent Infringement in the United States

#### 1. The Commission Has Consistently Construed Section 337 to Prohibit Both Direct and Indirect Patent Infringement in Import Trade

Congress created the International Trade Commission (formerly the Tariff Commission) more than 80 years ago and delegated to it the task of interpreting and enforcing the Tariff Act of 1930. From its inception, the Commission has interpreted Section 337 of that Act, 19 U.S.C. § 1337, to prohibit the importation of articles that infringe United States intellectual property rights. See, *e.g.*, *In re Orion Co.*, 71 F.2d

---

[1] The United States does not address any other question presented in this case, including whether the Commission permissibly concluded on the factual record before the agency that Suprema actively induced infringement of the '344 patent.

458 (C.C.P.A. 1934) (affirming exclusion of articles that infringed patent and trademark rights).

The Commission has consistently interpreted Section 337 to encompass not merely direct infringement, but any violation of the patent laws in import trade, including indirect infringement under 35 U.S.C. § 271(b). By the time of the enactment of the 1988 amendments at issue in this case, the Commission had already authoritatively construed Section 337 to prohibit induced patent infringement—including once in a determination affirmed in a published decision of this Court. See *Certain Molded-In Sandwich Panel Inserts and Methods for Their Installation*, Inv. No. 337-TA-99, USITC Pub. 1246 (Apr. 9, 1982), *aff'd, Young Eng'rs, Inc.* v. *ITC*, 721 F.2d 1305 (Fed. Cir. 1983); see also, *e.g., Certain Surveying Devices*, Inv. No. 337-TA-68, USITC Pub. 1085, 0080 WL 594364 (July 7, 1980) (finding direct and induced patent infringement); *Certain Apparatus for the Continuous Production of Copper Rod*, Inv. No. 337–TA–52, USITC Pub. 1017, at 18-19 (Nov. 23, 1979) (considering induced infringement and contributory infringement in addition to direct infringement).

In 1988, Congress amended Section 337 to ratify the Commission's longstanding view that the infringement of intellectual property is an unfair trade practice and to enhance the Commission's authority to remedy infringement.  See 1988 Act § 1341, 102 Stat. at 1211.  In an uncodified portion of the 1988 Act, Congress declared its findings and purpose:

(a) FINDINGS. — The Congress finds that —

(1) United States persons that rely on protection of intellectual property rights are among the most advanced and competitive in the world; and

(2) the existing protection under section 337 of the Tariff Act of 1930 against unfair trade practices is cumbersome and costly and has not provided United States owners of intellectual property rights with adequate protection against foreign companies violating such rights.

(b) PURPOSE. — The purpose of this part is to amend section 337 of the Tariff Act of 1930 to make it a more effective remedy for the protection of United States intellectual property rights.

§ 1341, 102 Stat. 1211-1212.

Consistent with those ends, the 1988 Act relaxed the requirement of proof of injury to a domestic industry for Section 337 cases predicated on the infringement of intellectual property.  See § 1342, 102 Stat. at

1212.  And it revised Section 337 to codify explicitly the principle that infringement of intellectual property will warrant an exercise of the Commission's exclusion authority.  See *ibid.*  As amended, Section 337 now prohibits "[t]he importation into the United States, the sale for importation, or the sale within the United States after importation by the owner, importer, or consignee, of articles that . . . infringe a valid and enforceable United States patent."  19 U.S.C. § 1337(a)(1)(B)(i).  The conference report for the 1988 Act emphasized that, in adopting this change, "the conferees do not intend to change the interpretation or implementation of current law as it applies to the importation or sale of articles that infringe certain U.S. intellectual property rights."  H.R. Conf. Rep. No. 100-576, at 633 (1988).

Since the 1988 Act, the Commission has continued to interpret Section 337 to prohibit all forms of patent infringement in import trade, including indirect infringement.  See, *e.g.*, *Vizio, Inc.* v. *ITC*, 605 F.3d 1330 (Fed. Cir. 2010) (affirming exclusion order based in part on active inducement of the infringement of a method patent); *Spansion, Inc.* v. *ITC*, 629 F.3d 1331 (Fed. Cir. 2010) (affirming exclusion order based in part on contributory infringement).  As the Commission reiterated in

9

2011, that approach is consistent with the plain language of Section 337(a)(1)(B)(i), which does not distinguish among the different forms of infringement recognized under the patent laws:

> The word "infringe" in section 337 derives its legal meaning from 35 U.S.C. § 271, the section of the Patent Act that defines patent infringement.  Section 271 defines infringement to include direct infringement (35 U.S.C. § 271(a)) and the two varieties of indirect infringement, active inducement of infringement and contributory infringement (35 U.S.C. § 271(b), (c)).  Thus, section 337(a)(1)(B)(i) covers imported articles that directly or indirectly infringe when it refers to "articles that—infringe."

*Certain Electronic Devices*, Inv. No. 337-TA-724, 2012 WL 3246515, at *8-9 (Dec. 21, 2011) (internal citation omitted).

The Commission thus broke no new ground when it recited in its opinion in this case that "[t]he Commission's remedial authority to issue exclusion orders extends to violations of section 337 based on indirect infringement."  A000215.  The Commission has consistently construed "articles that . . . infringe" to encompass the universe of articles whose unauthorized importation would support infringement liability under the Patent Act.  That interpretation embraces articles imported into the United States as part of an intentional scheme to induce the infringement of a United States patent.  Appellants and their amici do not dis-

10

pute that an importer in such a scheme would be liable for infringement under 35 U.S.C. § 271(b). The Commission construes Section 337 *in pari materia* to provide remedies against the same forms of infringement at the border that district courts are empowered to redress through infringement actions within the United States.

### 2. Congress Delegated to the Commission the Task of Translating the *In Personam* Prohibitions of the Patent Laws into the *In Rem* Context of Section 337 Exclusion Proceedings

The Commission's construction of Section 337(a)(1)(B)(i) reasonably resolves the interpretative difficulty inherent in the task that Congress assigned to the agency: translating the infringement provisions of the Patent Act, which impose liability *in personam*, into the exclusion provisions of the Tariff Act, which operate *in rem*.

The Commission had no choice but to exercise interpretative judgment in performing that task. As appellants emphasize (Br. 29), the Commission generally exercises *in rem* jurisdiction over imported articles. The *in rem* nature of the Commission's authority is an important feature of Section 337 proceedings because it enables the Commission to police access to the domestic market without the need to es-

11

tablish personal jurisdiction over foreign importers. See *Sealed Air Corp.* v. *ITC*, 645 F.2d 976, 985-987 (C.C.P.A. 1981).[2]

But under the Patent Act, *persons* infringe, not *things*. Section 271(a) provides that "*whoever* without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention . . . infringes the patent." 35 U.S.C. § 271(a) (emphasis added). Similarly, Section 271(b) provides: "*Whoever* actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. 271(b) (emphasis added). And Section 271(c) provides that "*[w]hoever*" sells or imports a specially adapted component of a patented invention "shall be liable as a contributory infringer." 35 U.S.C. § 271(c) (emphasis added). See also 35 U.S.C. § 271(e)(2), (f), (g). Under no provision of the patent laws does an "article," taken by itself, "infringe" a patent.

---

[2] Although it is well-settled that the Commission's orders under Section 337 "operate[] against goods, not parties," *Sealed Air Corp.*, 645 F.2d at 985, this Court has held that the Commission's statutory authority to issue a limited exclusion order includes an "*in personam* element" as well. See *Kyocera Wireless Corp.* v. *ITC*, 545 F.3d 1340, 1357 (Fed. Cir. 2008) (discussing the distinction between limited and general exclusion orders). For present purposes, the point is simply that Section 337 addresses articles that infringe, while the Patent Act defines conduct that infringes.

The phrase "articles that . . . infringe" thus has no inherent meaning under the patent laws. And nothing in Section 337 dictates how the Commission must interpret that phrase for purposes of the trade laws. Indeed, appellants acknowledge that "[t]he Tariff Act does not define the term 'articles that—infringe.'" Suprema Br. 30. Appellants thus admit that Congress did not answer the central interpretative question in this case.

That concession is fatal to appellants' argument. It is the prerogative of the Commission, as the agency charged with interpreting and enforcing the Tariff Act, to resolve such questions and give effect to the statutory command. See *Corning Glass Works* v. *ITC*, 799 F.2d 1559, 1565 (Fed. Cir. 1986) (recognizing that it is "particularly within the province and expertise of the Commission to define" the terms of the Tariff Act); see also, *e.g.*, *TianRui Grp. Co.* v. *ITC*, 661 F.3d 1322, 1332 (Fed. Cir. 2011) ("We have held that the Commission's reasonable interpretations of section 337 are entitled to deference."); *Enercon GmbH* v. *ITC*, 151 F.3d 1376, 1381 (Fed. Cir. 1998) (stressing that the Commission is "the agency charged with the administration of section 337").

13

### 3. The Commission's Construction of Section 337 Is Reasonable and Entitled to Deference

Because nothing in the Tariff Act or the Patent Act defines "articles that . . . infringe," the only question for this Court is whether the Commission has reasonably construed that phrase in adapting the *in personam* requirements of the Patent Act into the *in rem* framework of Section 337. See *Corning Glass Works*, 799 F.2d at 1565 (emphasizing that the Court's function in reviewing the Commission's interpretation of the Tariff Act is only "to decide whether the Commission's definitions or standards are *reasonable* in light of the language, policies and legislative history of the statute"). As already discussed, the Commission has long construed Section 337(a)(1)(B)(i) to provide a remedy at the border against articles involved in the same forms of "infringe[ment]" that a district court could redress in a civil action by the patentee. That conclusion is reasonable, consistent with the text, history, and policies of the Tariff Act, and entitled to deference.

First, the Commission has reasonably concluded that, by referring to "infringe[ment]" in Section 337, Congress meant to encompass not merely direct infringement, but also contributory and induced infringement. As the Commission has explained, the term "infringe" re-

14

fers to infringement liability under Section 271 of the Patent Act, and that section defines both direct and indirect infringement. See *Certain Electronic Devices*, 2012 WL 3246515, at *8-9.

The right of a patentee to restrain those who would knowingly cause (*i.e.*, contribute to or actively induce) an invasion of the patentee's exclusive rights, moreover, is an essential component of the Patent Act's protections against infringement and has been recognized in American patent law for more than a century. See *Henry* v. *A.B. Dick Co.*, 224 U.S. 1, 33-48 (1912); cf. *Global-Tech Appliances, Inc.* v. *SEB S.A.*, 131 S. Ct. 2060, 2066-2067 (2011) ("*Global-Tech*"). For that reason, Congress has defined the active inducement of patent infringement as itself a basis for imposing infringement liability. See 35 U.S.C. § 271(b) ("Whoever actively induces infringement of a patent shall be liable as an infringer."). Indeed, the Patent Act provides that a "patentee shall have remedy by civil action *for infringement* of his patent," 35 U.S.C. § 281 (emphasis added), and it is undisputed that a patentee may exercise that right by bringing a civil action solely against a person who ac-

tively induces infringement, without suing the direct infringer.[3] The Commission thus reasonably construes the term "infringe" in Section 337 to encompass indirect infringement.

Second, in translating the *in personam* provisions of the Patent Act into the *in rem* framework of the Tariff Act, the Commission reasonably treats articles imported as part of an intentional scheme to induce the infringement of a United States patent as "articles that . . . infringe." Appellants do not dispute that a person who imports articles into the United States with the requisite intent to induce infringement, and in fact does induce such infringement, may be held liable in a district court infringement action under 35 U.S.C. § 271(b).[4] Because that conduct triggers infringement liability under the Patent Act, the Commission reasonably treats the imported articles themselves as "infring[ing]" under Section 337. In this sense, the Commission treats induced infringement no differently from direct infringement: in both

---

[3] This commonly occurs when the direct infringer is an ordinary consumer or a privileged user. Cf. 35 U.S.C. § 287(c) (limiting infringement actions against medical practitioners).

[4] See, *e.g.*, *Crystal Semiconductor Corp.* v. *TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001) (affirming verdict of infringement under Section 271(b) against an importer who actively induced infringement of a method patent in the United States).

cases, it is the conduct of the importer that triggers *in personam* liability under Section 271 of the Patent Act, which the Commission then attributes to the articles themselves under Section 337 of the Tariff Act.

In an ordinary linguistic sense, moreover, it is natural to describe the articles at issue in a case of indirect infringement as "articles that . . . infringe." This Court itself regularly describes the products at issue in contributory and induced infringement cases as "infringing," notwithstanding that such products by definition do not themselves fall within any claim of any patent at issue. For example, in *Lucent Technologies, Inc.* v. *Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009), which involved a $350 million verdict against Microsoft for contributory and induced infringement of a method patent, the Court's opinion referred to "the infringing software products." See *id.* at 1336, 1338. See also, *e.g.*, *Power Integrations, Inc.* v. *Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1374 (Fed. Cir. 2013) (referring, in a case concerning induced infringement of a United States method patent, to the "portion of the infringing products not imported into the United States"); *LaserDynamics, Inc.* v. *Quanta Computer, Inc.*, 694 F.3d 51, 81 (Fed. Cir. 2012) (referring to the "infringing" parts in a case concerning induced infringe-

17

ment of a method patent). Particularly given this accepted usage, the Commission reasonably construes the phrase "articles that . . . infringe" to encompass articles that indirectly infringe.

Third, there is little doubt that the Commission's construction is consistent with the history and policies of the Tariff Act. As already discussed, the Commission has interpreted Section 337 since its inception to prohibit, as an unfair trade practice, the importation of articles that infringe United States intellectual property rights. By the time of the 1988 Act, the Commission had construed Section 337 to prohibit the importation and sale after importation of articles involved in the indirect infringement of United States patents. See p.7, *supra*. And in 1988, Congress acted to ratify and enhance the Commission's authority to provide remedies at the border against articles involved in schemes to invade the exclusive rights of United States patentees. See 1988 Act § 1341(a)(2), (b), 102 Stat. 1212 (finding that Section 337 "has not provided United States owners of intellectual property rights with adequate protection against foreign companies violating such rights" and declaring that the purpose of the 1988 Act was "to make [Section 337] a more effective remedy for the protection of United States intellectual

18

property rights"). The Commission's interpretation of Section 337(a)(1)(B)(i) reasonably advances the objectives of the 1988 legislation as declared by Congress.

Finally, the Commission's interpretation of Section 337(a)(1)(B)(i) has the substantial benefit of aligning the remedies available at the border under Section 337 with those available in domestic district court infringement actions. Particularly absent some affirmative indication that Congress *wanted* to create a substantial lacuna between the two enforcement schemes (and appellants cite none), that benefit is by itself compelling evidence of the reasonableness of the Commission's interpretation. The Commission's construction ensures broad consistency in the protection of intellectual property both at and within the borders of the United States. And as a matter of trade policy, the Commission's approach prevents unscrupulous importers from evading the prohibitions of the Tariff Act by structuring their operations to exploit the boundaries between direct and indirect infringement. See generally dis. op. 12-15 (Reyna, J., dissenting in part); Cross Match Br. 32-34; AIPLA Amicus Br. 26-29.

## B.     The Panel's Contrary Ruling Is Unpersuasive

The panel nevertheless interpreted the Tariff Act to render the Commission "powerless to remedy acts of induced infringement in these circumstances"—that is, in all circumstances in which the Commission might plausibly commence a Section 337 investigation based on active inducement.[5]  Slip op. 13.  The panel's conclusions, and the related arguments of appellants and their amici, rest on several interrelated premises about the nature of inducement liability and the operation of Section 337.  None withstands scrutiny.

### 1.     The Panel Mistakenly Believed That the Patent Act Defines "Articles That . . . Infringe"

The panel reasoned that induced infringement cannot support an exclusion order under Section 337 because the "focus" of inducement li-

---

[5] The panel suggested in a footnote that the Commission might appropriately issue an exclusion order predicated on Section 271(b) "where the direct infringement occurs *pre*-importation."  Slip op. 21 n.4 (emphasis added).  But it is unclear what the panel meant by that caveat.  The Patent Act defines direct infringement as conduct occurring "within the United States," 35 U.S.C. § 271(a), and the Supreme Court has repeatedly held that the manufacture and use of a patented invention outside of the United States does not constitute infringement, see, *e.g.*, *Microsoft Corp.* v. *AT&T Corp.*, 550 U.S. 437, 442-444 (2007); *Deepsouth Packing Co.* v. *Laitram Corp.*, 406 U.S. 518, 527 (1972).  It is therefore unclear in what circumstances "direct infringement" could "occur[] pre-importation."  Slip op. 21 n.4.

ability under Section 271(b) is on "the conduct of the inducer," while direct and contributory liability is "tied to an article." Slip op. 19. In the panel's estimation, therefore, "[t]he patent laws essentially define articles that infringe in § 271(a) and (c), and those provisions' standards for infringement (aside from the 'United States' requirements, of course) must be met at or before importation in order for the articles to be infringing when imported." Slip op. 20.

This reasoning fails at every turn. As already discussed, *all* of the infringement provisions of the Patent Act focus on the "conduct" of the alleged infringer. See 35 U.S.C. § 271(a) ("[W]hoever…."); *id.* § 271(b) ("Whoever…."); *id.* § 271(c) ("Whoever…."); *id.* § 271(f)(1) ("Whoever…."); *id.* § 271(f)(2) ("Whoever…."); *id.* § 271(g) ("Whoever…."); see also *id.* § 271(h) (defining the term "whoever" "[a]s used in this section"). Nothing in the Patent Act contemplates a circumstance in which an "article," by itself, infringes a patent. To the contrary, the exclusive rights conferred by a patent are, by definition, rights against the conduct of other persons. See 35 U.S.C. § 154(a) (defining the patent grant as "the right to exclude others" from exploiting the claimed invention in specified ways).

21

Appellants are thus more correct than they realize when, like the panel, they emphasize that "[i]nducement is fundamentally *in personam*, not *in rem* in nature." Suprema Br. 31. That is true of all infringement liability under the Patent Act. And that is precisely the interpretative difficulty that Congress expected the Commission to resolve in translating the domestic concept of patent infringement into the *in rem* framework of the Tariff Act.

The panel's parenthetical acknowledgment that "the United States requirements" of Sections 271 would "of course" not apply in exclusion proceedings, see slip op. 20, only underscores that Congress did not answer the question before the Court. The "United States requirements" of Sections 271(a) and (c) address where the relevant *conduct* must take place to constitute direct or contributory infringement. Excising those requirements would not convert Sections 271(a) and (c) into *in rem* definitions of infringing articles. And the fact that the panel felt compelled to acknowledge that the Commission could not borrow Sections 271(a) and (c) as written only highlights the error of the panel's textual analysis.

### 2. The Panel Erred in Suggesting That an Exclusion Order Cannot Depend on the Culpable Intent of the Importer

The panel also expressed doubt that an exclusion order predicated on Section 271(b) could properly depend on the intent of the accused infringer with respect to an otherwise staple article. See, *e.g.*, slip op. 25 (declaring that the Commission "may not invoke inducement to ban importation of articles which may or may not later give rise to direct infringement of Cross Match's patented method *based solely on the alleged intent of the importer*"). Appellants now make this the dominant theme of their argument, declaring that "[n]othing in either section 337 or section 271 somehow transforms a staple article into an infringing article." Suprema Br. 32; see *id*. at 34-38.

But the Commission did not find that Suprema induced infringement of the '344 patent by "the mere sale of a staple article." Suprema Br. 49. Rather, the Commission found that Suprema knowingly aided and abetted Mentalix's direct infringement of the '344 patent while willfully blinding itself to the infringing nature of Mentalix's activities. See A000225 (finding that Suprema "deliberately shielded itself from the nature of the infringing activities it actively encouraged and facilitated

Mentalix to make"); see generally Cross Match Br. 50-59.   That is the very conduct that Congress provided shall make a person "liable as an infringer."  35 U.S.C. § 271(b); see *Global-Tech*, 131 S. Ct. at 2071.  The Commission's remedial orders are appropriately tailored to that infringing conduct.  See A400502 (Exclusion Order ¶ 1) (ordering the exclusion of scanners and related Suprema products to the extent they "infringe"); A400502-A400503 (Exclusion Order ¶ 3) (certification process permitting others to import Suprema scanners for non-infringing purposes); A400505-A400512 (cease-and-desist order to Mentalix); see generally Commission Br. 58-63.

In a similar vein, appellants and amici suggest that exclusion orders predicated on inducement are ill-suited to the *in rem* nature of Section 337 proceedings because customs officials cannot ascertain from the face of an article itself whether it was imported with the requisite culpable intent.   See Suprema Br. 52; Dell Amicus Br. 20 (asserting that "whether the 'articles . . . infringe' must be ascertainable by examining the articles themselves").  But appellants cite nothing in the Tariff Act or this Court's cases that limits exclusion orders to articles whose infringing nature is apparent on their face, and it is obvious that many

24

articles whose exclusion is contemplated by the statute would fail such a test. Since 1940, for example, Congress has authorized the Commission to exclude products manufactured overseas by a process patented in the United States. See 19 U.S.C. § 1337(a)(1)(B)(ii). As this Court's predecessor recognized, whether an imported product was in fact manufactured by the relevant process often "is not discernable from an examination of the product." *Sealed Air Corp.*, 645 F.2d at 987.

Indeed, even in the archetypal case of an imported article that embodies all of the elements of an apparatus claim in a United States patent, infringement generally cannot be ascertained from an examination of the imported article alone. That is because an element of direct infringement under the Patent Act is that the infringer acted "without authority"—*i.e.*, without a license from the patent owner. 35 U.S.C. § 271(a). One importer who imports a patented product may have a license to do so, while another does not; the latter has committed direct infringement, but the former has not. In neither event could customs officials determine from the face of the article itself whether the importation was authorized.

For this and other reasons (including the usual complexities of determining what infringes), exclusion orders issued by the Commission generally do not assume that the excludability of an article will be evident on its face.  Rather, as it did in this case, the Commission allows parties seeking to import articles for non-infringing purposes to certify that, "to the best of their knowledge and belief, the products being imported are not excluded from entry" under the terms of the Commission's order.  See A400502-A400503 (Exclusion Order ¶ 3) (certification procedure in this case); Commission Br. 59-60.  As the panel dissent explained, there is no reason to assume that these established mechanisms will fail to protect the rights of innocent importers.  See dis. op. 15 (Reyna, J., dissenting in part) ("I view the Commission as an international trade agency with the expertise and experience to fashion exclusion orders of appropriate scope.").

Appellants' contention at bottom appears to be that the Commission cannot properly exclude articles as infringing solely by reference to the wrongful intent of the importer.  But Congress authorized the Commission to exclude "articles that . . . infringe," and culpable intent is the line that Congress drew in Section 271(b) in distinguishing inno-

cent conduct from infringement.  See *Global-Tech*, 131 S. Ct. at 2065.

District courts applying Section 271(b) therefore must distinguish in-fringing acts from non-infringing ones on the basis of culpable intent, both in establishing liability and in crafting remedies.  In the same way, the Commission gives effect to Section 271(b) by excluding from the United States articles that the Commission determines are imported by named respondents with the necessary guilty intent.[6]

### 3.     The Panel Incorrectly Believed That Imported Articles Cannot Infringe Under Section 271(b) If Direct Infringement Occurs After Importation

Finally, the panel reasoned that Section 271(b) cannot support an exclusion order because liability for active inducement requires proof of

---

[6] This approach is consistent with the *in rem* nature of Commission proceedings.  Indeed, it is a venerable principle of *in rem* jurisdiction that the guilty or culpable intent of an actor can be imputed to property, rendering the property guilty in the eyes of the law.  See generally Rufus Waples, *A Treatise on Proceedings In Rem* § 147, at 214 (1882) ("Guilty Intent Imputed to Things"); cf. *United States* v. *Bajakajian*, 524 U.S. 321, 330-333 (1998) (discussing traditional principles of civil *in rem* forfeiture, and citing Waples).  It was well-settled by the time of the enactment of the Tariff Act of 1930, for example, that other-wise "innocent" property was subject to civil *in rem* forfeiture if it was used, or knowingly permitted to be used, for certain wrongful purposes.  See, *e.g.*, *Waterloo Distilling Corp.* v. *United States*, 282 U.S. 577, 580-581 (1931); *Dobbins's Distillery* v. *United States*, 96 U.S. 395, 401-402 (1878).

downstream direct infringement.  Slip op. 20.  Because that direct in-
fringement would not occur until after importation, the panel stated,
articles imported to induce infringement cannot constitute "articles that
. . . infringe" at the time of importation.  Slip op. 20-21.

That conclusion is untenable.  It is of course well-settled that lia-
bility for indirect infringement requires evidence that a downstream
party directly infringes.  See, *e.g.*, *Limelight Networks, Inc.* v. *Akamai
Techs., Inc.*, 134 S. Ct. 2111, 2117 & n.3 (2014).  Consistent with that
principle, the Commission in this case found that Mentalix directly in-
fringed the '344 patent.  See A000220 ("The Commission finds that the
record evidence is sufficient to support a finding of direct infringement
of claim 19 of the '344 patent by Mentalix . . . ."); see generally Commis-
sion Br. 38-42.  If that finding was not based on substantial evidence in
the record before the agency, the exclusion order should be vacated on
that basis.

The panel did not, however, take issue with the record evidence.
See slip op. 26 (declining to address "[w]hether Mentalix directly in-
fringes claim 19 of the '344 patent").  It declared instead that, as a mat-
ter of statutory construction, the Commission *cannot* exclude articles

imported for the purpose of inducing infringement because, at the time the article crosses the border, the intended injury to the patent holder has not yet occurred.  Slip op. 20-21.

That would be an odd result for a statute that Congress enacted to prohibit unfair practices in the import trade, and nothing in the Tariff Act suggests that Congress intended it.  As already noted, there is no literal interpretation of "articles that . . . infringe" that reconciles Section 337(a)(1)(B)(i) with the patent laws.  Even in cases of direct infringement, it is incoherent in traditional patent-law terms to speak of an article as "infring[ing]" at the time of importation.  The Commission therefore reconciles the commands of the Tariff Act and the Patent Act by construing Section 337 to authorize the exclusion of articles imported as part of a successful scheme to induce the direct infringement of a patent inside the United States.

That approach is consistent with the text and purposes of both the Tariff Act and the Patent Act.  Like the district courts, the Commission requires evidence of direct infringement in the United States before it will find indirect infringement by an importer.  Cf. *Limelight Networks*, 134 S. Ct. at 2117.  But where, as here, the Commission finds that an

importer *has* actively induced direct infringement in the United States, the Commission reasonably treats the articles imported as part of that inducement scheme as "articles that . . . infringe." Appellants do not dispute that, in analogous circumstances, a district court could enjoin the offending acts of importation (*i.e.*, those that actively induce direct infringement) under Section 271(b). See Suprema Br. 32. The Commission reasonably construes Section 337 *in paria materia* to permit the exclusion of articles imported in furtherance of such a scheme.

If the panel's contrary interpretation were correct, it would equally foreclose the Commission from predicating an exclusion order on contributory infringement under Section 271(c). The panel took pains to emphasize that its decision addressed only inducement, not contributory infringement. See, *e.g.*, slip op. 20 (concluding that "[t]he patent laws essentially define articles that infringe in § 271(a) and (c)"); slip op. 21 n.4 (explaining that "[o]ur holding is far narrower than the dissent asserts" because "virtually all of the mischief the dissent fears can be addressed by the ITC via resort to § 271(a) or § 271(c)"). Yet contributory infringement, like induced infringement, requires proof of a downstream act of direct infringement. See *Aro Mfg. Co.* v. *Convertible Top*

*Replacement Co.*, 365 U.S. 336, 341 (1961). Thus, seizing on the panel's reasoning, several amici forthrightly contend that Section 337 permits exclusion orders for direct infringement only. See, *e.g.*, Dell Amicus Br. 15 (asserting that "the meaning of 'articles that . . . infringe' is defined and limited by the definition of infringement in § 271(a)"); Microsoft Amicus Br. 18-19.

That result cannot plausibly be attributed to congressional design. As the panel dissent explained—and as the majority appeared to agree, at least with respect to contributory infringement, see slip op. 21 n.4—limiting Section 337 to instances of direct infringement would invite all manner of mischief in international trade. It would permit unscrupulous importers to bypass the Commission altogether by "legaliz[ing] the most common and least sophisticated form of circumvention, importation of the article in a disassembled state." Dis. op. 13 (Reyna, J., dissenting in part). And it would render the Commission powerless to prevent even the most explicit schemes to induce the infringement of method patents in the United States, such as by importing devices specially designed to perform the patented methods when operated by end-

users.  It is not credible to suppose that Congress would so readily "overlook[] the practical realities of international trade."  Dis. op. 13.

The irony of the panel's restrictive interpretation of Section 337(a)(1)(B)(i) is that there is little doubt that the intentional importation of articles to induce patent infringement in the United States would have constituted an unfair trade practice under Section 337 as that statute was construed by the Commission for more than fifty years before the 1988 Act.  See, *e.g.*, *Young Eng'rs, Inc.* v. *ITC*, 721 F.2d 1305 (Fed. Cir. 1983) (affirming a Commission determination under Section 337 predicated on induced patent infringement).   Congress enacted the 1988 Act for the express purpose of *enhancing* the Commission's authority to combat the infringement of United States intellectual property. See 1988 Act, § 1341(a)(2), (b), 102 Stat. at 1212 (findings and purpose). The Commission appropriately interprets Section 337(a)(1)(B)(i) to effectuate that intent.  But if the panel's reasoning prevails, Congress will have accomplished exactly the opposite of what it intended.

## CONCLUSION

For the foregoing reasons, the Commission's interpretation of Section 337 is reasonable, consistent with the text and history of the Tariff Act, and entitled to deference.

Respectfully submitted,

JOYCE R. BRANDA
*Acting Assistant Attorney*
*General*

SCOTT R. MCINTOSH
(202) 514-4052

**s/ Mark R. Freeman**

MARK R. FREEMAN
(202) 514-5714
*Attorneys, Appellate Staff*
*Civil Division, Room 7228*
*U.S. Department of Justice*
*950 Pennsylvania Ave., N.W.*
*Washington, D.C.  20530*

OCTOBER 2014

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing amicus brief complies with the requirements of Fed. R. App. P. 32(a)(5) because it has been prepared in 14-point Century Schoolbook, a proportionally spaced font.

I further certify that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and 29(d) because it contains **6,403 words**, excluding the parts of the brief exempted under Rule 32(a)(7)(B)(iii), according to the count of Microsoft Word.

**s/ Mark R. Freeman**
MARK R. FREEMAN

## CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2014, I electronically filed the foregoing amicus brief with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system.

The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.


 **s/ Mark R. Freeman**
MARK R. FREEMAN